1

2

3                       UNITED STATES DISTRICT COURT

4                       NORTHERN DISTRICT OF CALIFORNIA

5

6

7    STEVEN WAMBOLDT,

8            Plaintiff,                          No. C 07-0884 PJH

9        v.                                      **ORDER DENYING MOTION FOR**
                                                 **RECONSIDERATION AND MOTION**
10   SAFETY-KLEEN SYSTEMS, INC.,                 **FOR SUMMARY JUDGMENT**
     et al.,
11
             Defendants.
12   _____/

13          Defendant's motion for reconsideration of the court's August 21, 2007 order granting

14   summary judgment in part and denying summary judgment in part, and defendant's second

15   motion for summary judgment both came on for hearing before this court on October 31,

16   2007.  Plaintiff Steven Wamboldt ("Wamboldt" or "plaintiff") appeared through his counsel,

17   Barron E. Ramos, Jeremy R. Fietz, and Donald S. Edgar.  Defendant Saftey-Kleen

18   Systems, Inc. ("Safety-Kleen" or "defendant"), appeared through its counsel, Robert W.

19   Tollen.  Having read all the papers submitted and carefully considered the relevant legal

20   authority, the court hereby DENIES both the motion for reconsideration and the motion for

21   summary judgment, for the reasons stated at the hearing, and as follows.

22                                  **BACKGROUND**

23          A.     Background Allegations

24          Plaintiff Wamboldt was formerly employed as a customer service representative

25   ("CSR") for defendant Safety-Kleen, which is engaged in the business of providing

26   industrial washing services, and industrial waste and oil recycling services, to various

27   private companies and government entities.  See First Amended Complaint ("Am. Compl.")

28   ¶ 2.  Wamboldt's duties as a CSR included customer sales, client collections, and various

United States District Court

For the Northern District of California

1   telephone responsibilities, as well as on-site servicing of equipment, transportation of

2   hazardous waste, and driving of company vehicles in order to perform customer service

3   calls. See id. at ¶ 8.

4          On November 17, 2006, plaintiff filed the instant action on behalf of himself and

5   others in Los Angeles Superior Court.  Defendant subsequently removed the case to the

6   Central District, alleging federal question jurisdiction pursuant to the Class Action Fairness

7   Act of 2005.  The case was then transferred to this court, where a related case, Perez v.

8   Safety Kleen Systems, Inc., C 05-5338 PJH, was already pending.

9          Plaintiff generally alleges that Safety-Kleen unlawfully failed to pay overtime due its

10   CSRs, as required by California Labor Code § 510.  In addition to failing to pay overtime,

11   plaintiff alleges that Safety-Kleen also improperly reduced commissions payable to those

12   employees. See Am. Compl. ¶¶ 10, 12, 27-28.  The complaint also contains derivative

13   claims alleging that defendant violated California Labor Code § 202, which requires an

14   employer to pay all wages due within 72 hours of an employee's quitting; California Unfair

15   Competition law, Cal. Bus. & Prof. Code §§ 17200 et seq., which prohibits unlawful

16   withholding of wages; and the California Labor Code Private Attorneys General Act of 2004

17   ("PAGA"), Labor Code §§ 2698 et seq., which authorizes civil penalties. Id. ¶¶ 13, 26, 30,

18   33-41.

19          B.      Procedural History

20          In August 2007, the court heard Safety-Kleen's motion for summary judgment and

21   plaintiff's motion for class certification.  In support of its motion for summary judgment,

22   Safety-Kleen contended that California's overtime requirements were not applicable to

23   Safety Kleen's customer service representatives, including Wamboldt, because the

24   California motor carrier exemption applies.  Safety-Kleen also contended that it used

25   branch revenue, not profitability, in calculating CSR commission compensation and that

26   California law did not prohibit that practice.

27          On August 21, 2007, the court issued its order granting in part and denying in part

28

2

United States District Court

For the Northern District of California

1   Safety-Kleen's motion for summary judgment, and granting plaintiff's motion for class

2   certification.  With respect to the summary judgment motion, the court denied summary

3   judgment on the issue whether California's overtime requirements apply to Safety-Kleen, in

4   view of a material dispute of fact regarding application of the motor carrier exemption under

5   California law.  Specifically, the court found that a material dispute of fact existed as to

6   whether and to what extent plaintiff Wamboldt drove hazardous materials, a critical issue in

7   determining whether the motor carrier exemption applies.  The court also found it

8   unnecessary to resolve whether the California motor carrier exemption, which has not often

9   been interpreted, should follow the analogous federal motor carrier exemption in

10  determining whether and how the exemption applies.  See generally August 21, 2007 Order

11  Granting in Part and Denying in Part Motion for Summary Judgment; Granting Class

12  Certification ("August 21, 2007 Order").

13        Subsequently, Safety-Kleen filed a motion for leave to seek reconsideration of the

14  court's order, to the extent it denied summary judgment on plaintiff's overtime claims.  In its

15  request for leave, Safety-Kleen argued that the court's order failed to consider material

16  facts and/or dispositive legal arguments.  Specifically, Safety-Kleen argued: (1) that the

17  court had overlooked the distinction between the types of services provided by plaintiff –

18  parts washing v. industrial waste management – in deciding that material disputes of fact

19  were presented as to whether plaintiff was a driver of hazardous materials; and (2) that the

20  court erroneously failed to consider whether California's motor carrier exemption applies to

21  Wamboldt and the absent class members.  With respect to the former, Safety-Kleen noted

22  (for the first time) that plaintiff had only submitted disputed issues of fact as to whether he

23  was a driver of hazardous materials in the course of performing part washing services, but

24  that plaintiff had failed to refute Safety-Kleen's evidence that plaintiff regularly transported

25  hazardous materials when performing industrial waste management services.

26        Safety-Kleen also requested leave to file a motion for summary judgment in order to

27  assert a new legal ground – that the California overtime requirements are not applicable

28

3

United States District Court

For the Northern District of California

1  because Wamboldt is exempt under federal Department of Transportation ("DOT")

2  regulations.

3        On September 10, 2007, the court granted Safety-Kleen's motion for leave to file a

4  motion for reconsideration as to the parts washing v. industrial waste management

5  discrepancy.  The court also granted Safety-Kleen leave to file its additional summary

6  judgment motion with respect to the application of the federal DOT regulations.

7        Those motions are now before the court.

8                              **DISCUSSION**

9        A.    Legal Standard

10       Summary judgment shall be granted if "the pleadings, depositions, answers to

11  interrogatories, and admissions on file, together with the affidavits, if any, show that there is

12  no genuine issue as to any material fact and that the moving party is entitled to judgment

13  as a matter of law."  FRCP 56(c).  Material facts are those which may affect the outcome of

14  the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to

15  a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

16  verdict for the nonmoving party.  Id.  The court must view the facts in the light most

17  favorable to the non-moving party and give it the benefit of all reasonable inferences to be

18  drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

19  587 (1986).

20       A party seeking summary judgment bears the initial burden of informing the court of

21  the basis for its motion, and of identifying those portions of the pleadings and discovery

22  responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

23  v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof

24  at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

25  than for the moving party.  On an issue where the nonmoving party will bear the burden of

26  proof at trial, the moving party can prevail merely by pointing out to the district court that

27  there is an absence of evidence to support the nonmoving party's case.  Id.  If the moving

28

                                        4

United States District Court

For the Northern District of California

1  party meets its initial burden, the opposing party must then set forth specific facts showing

2  that there is some genuine issue for trial in order to defeat the motion.  See Fed. R. Civ. P.

3  56(e); Anderson, 477 U.S. at 250.

4      "To show the existence of a 'genuine' issue, . . . [a plaintiff] must produce at least

5  some significant probative evidence tending to support the complaint."  Smolen v. Deloitte,

6  Haskins & Sells, 921 F.2d 959, 963 (9th Cir. 1990) (quotations omitted).  The court must

7  view the evidence in the light most favorable to the non-moving party.  United States v. City

8  of Tacoma, 332 F.3d 574, 578 (9th Cir. 2003).  The court must not weigh the evidence or

9  determine the truth of the matter, but only determine whether there is a genuine issue for

10  trial.  Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).  If the nonmoving party

11  fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment

12  as a matter of law."  Celotex, 477 U.S. at 323.  Regardless of whether plaintiff or defendant

13  is the moving party, each party must "establish the existence of the elements essential to

14  [its] case, and on which [it] will bear the burden of proof at trial."  Id. at 322.

15      B.      Motion for Reconsideration

16      Safety-Kleen's motion for reconsideration asks the court to revisit its prior holding

17  that a disputed issue of material fact exists on the question whether Wamboldt regularly

18  transported hazardous materials, thereby triggering application of the California motor

19  carrier exemption.  Safety-Kleen also asks the court to affirmatively decide the legal

20  standard the factfinder must apply to determine whether Wamboldt is covered by the

21  exemption – specifically, whether the California motor carrier exemption follows the federal

22  motor carrier exemption in determining whether drivers are subject to the exemption on

23  days in which they do not transport hazardous materials.

24      First, however, Wamboldt raises the argument that Safety-Kleen's motion for

25  reconsideration is procedurally improper.  Wamboldt argues that, since the court has

26  already certified a class, the motion for reconsideration violates the due process rights of

27

28

5

United States District Court

For the Northern District of California

those class members.[1]  Generally speaking, Wamboldt is correct that due process requires that certified class members be given notice and an opportunity to be heard with respect to the merits of the claims asserted.  See, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12 (1985).  However, this concern need not bar the court's consideration of either motion presented here, for in the event the court grants the present motion to reconsider or the corresponding motion for summary judgment in defendant's favor, the court may also decertify the class as a remedy.  See Fed. R. Civ. P. 23(c)(1)(C)(court may amend certification order at any time before judgment).  As such, while plaintiff raises a legitimate point, it does not preclude the present motions from being heard.

The court now turns to its consideration of (a) whether a disputed issue of fact persists on the question whether Wamboldt regularly transported hazardous materials such that the California motor carrier exemption is triggered; and (b) the legal standard that the court should employ in assessing the applicability of California's motor carrier exemption.

Preliminarily, and by way of background, California's "motor carrier exemption" is contained in multiple Industrial Welfare Commission ("IWC") wage orders, two of which – Wage Orders 4 and 7 – the court has already found to apply.  Using Wage Order 7 (governing the mercantile industry) as a guide, the motor carrier exemption states:  that the provisions of the overtime section are not applicable to *employees whose hours of service are regulated* by (1) the United States Department of Transportation ("DOT") Code of Federal Regulations, title 49, sections 395.1 to 395.13, Hours of Service of Drivers; or (2) Title 13 of the California Code of Regulations, section 1200, subchapter 6.5, section 1200 and following sections, regulating hours of drivers.  See IWC Order No. 7-1001 ("Order 7"), § 3(K).  In other words, the IWC's motor carrier exemption applies to employees whose

---

[1]      Wamboldt also argues that the motion fails to comply with Local Rule 7-9(a)'s requirement that reconsideration must take place before the entry of a final judgment or decision.  This argument is nonsensical, however, since Local Rule 7-9(a) specifically grants a party the ability to seek leave to file a motion for reconsideration "of any interlocutory order," and the court's denial of summary judgment constitutes an interlocutory order.  See Civ. L.R. 7-9(a).

United States District Court

For the Northern District of California

1   hours of service are regulated by either (1) federal regulations regarding hours of service of

2   drivers; or (2) California state regulations regarding the hours of drivers.

3               a.   Wamboldt's transportation of hazardous materials

4         Safety-Kleen maintains here, as it did in its original motion before the court, that the

5   hours of its CSRs are regulated by 13 California Code of Regulations ("CCR") §§ 1200 et.

6   seq.  These regulations contains certain provisions that limit the driving time of drivers of

7   various vehicles, which vehicles are listed in California Vehicle Code § 34500, and include

8   "trucks ... transporting hazardous materials."  According to Safety-Kleen, its CSRs,

9   including Wamboldt, drive vehicles that transport hazardous materials, and are covered by

10  these CCR regulations, thereby triggering the IWC's motor carrier exemption pursuant to

11  the second prong of the exemption.

12        The court's prior order found that a dispute of material fact exists as to whether

13  Wamboldt in fact regularly transports hazardous materials, and therefore, as to whether

14  Wamboldt is covered by the CCR regulations (and by extension, the motor carrier

15  exemption).[2]  See August 221, 2007 Order at 11.  The court found disputed facts on the

16  basis of Safety-Kleen's evidence that Wamboldt transported hazardous materials

17  approximately 85.7% of his workdays (and Wamboldt's own acknowledgment that he drove

18  25% of the day), and Wamboldt's contrasting evidence that he did not transport hazardous

19  materials on a regular basis, and never carried the two types of concentrate materials that

20  defendant asserted were hazardous substances.  See id. at 11-13.

21        Now, however, Safety-Kleen argues that the court overlooked the distinction

22  between two separate services provided by Safety-Kleen – parts washing services and

23  industrial waste management services.  In the parts washing service, CSRs leave the

24  branch, loaded with fresh cleaning solvent, additional parts washers, and other Safety-

25

26        [2]      As the court held in its prior order, application of the IWC's motor carrier
    exemption depends "upon how often and to what extent Wamboldt drove a truck transporting
27  hazardous materials, which include materials designated as hazardous under 49 CFR §
    172.101]."  See Order at 12:10-12.
28

United States District Court

For the Northern District of California

1   Kleen cleaning products, and visit their customers, where they remove the used cleaning

2   solvent from the customer's parts washers and replace it with fresh solvent. See May 22,

3   2007 Declaration of Billy R. Ross ISO Motion for Summary Judgment/Partial Summary

4   Judgment ("First Ross Decl."), ¶¶ 3-5. Two of the cleaning solvents used for this parts

5   washing service are the Aqua works MM-Spray, and the Aqua Works MM-DIP

6   concentrates. Id. at ¶ 5. Both of these solvents are classified as hazardous under the

7   DOT's list of hazardous materials, which list is incorporated under 13 CCR §§ 1200 et seq.

8   In the industrial waste management service provided by Safety-Kleen, industrial waste is

9   placed by customers into DOT approved shipping containers, and picked up by the CSRs,

10  who drive the containers from the customer's place of business back to the branch. Id. at ¶

11  6. Safety-Kleen states that much of this industrial waste is recognized as hazardous by the

12  DOT and the U.S. Environmental Protection Agency, and that such hazardous material

13  must be shipped on a uniform hazardous waste manifest, with the proper DOT shipping

14  name used to describe the hazardous material being shipped. See id.

15       Safety-Kleen argues that, while Wamboldt was able to create a disputed issue of

16  material fact as to the hazardous materials he transported with respect to the parts washing

17  services, Wamboldt never actually disputed that he carried hazardous materials on a

18  regular basis with respect to the industrial waste services provided by Safety-Kleen. See

19  Mot. for Reconsideration and Summary Judgment at 1:17-22; see also Mot. for Leave to

20  File Mot. for Reconsideration at 3:8-4:16. Accordingly, even if denial of summary judgment

21  were warranted with respect to Wamboldt's transfer of hazardous materials in relation to

22  the parts washing services, it remains undisputed that Wamboldt regularly transferred

23  hazardous materials with respect to industrial waste services, thereby triggering the motor

24  carrier exemption and warranting summary judgment in Wamboldt's favor as to this issue.

25       In support of its argument, Safety-Kleen relies on Exhibits C and D to the First Ross

26  Declaration, which were submitted in support of defendant's original motion for summary

27  judgment. See Mot. for Reconsideration and Summary Judgment at 1:17-20. According to

28

8

**United States District Court**
For the Northern District of California

1    Safety-Kleen, this evidence – now clarified for the court – shows that Wamboldt transported

2    customer-generated hazardous materials from customer to branch on 87.5% of

3    Wamboldt's actual workdays when performing industrial waste management services.

4    Safety-Kleen also continues to rely on plaintiff's concession that he drove 25% of his work

5    day.  See, e.g., June 27, 2007 Declaration of Steven Wamboldt Opposing Motion for

6    Summary Judgment/Partial Summary Judgment ("First Wamboldt Decl."), ¶ 3.

7         Even conceding, however, the court's failure to take the distinction between parts

8    washing and industrial waste management services into account, the court is still unable to

9    conclude that no material dispute of fact exists.  This is primarily because Safety-Kleen's

10    evidence here is exactly the same as before.  And reviewing this same evidence – even in

11    light of Safety-Kleen's clarification – discloses that it is the evidence itself that fails to

12    distinguish between the hazardous waste generated by the parts washing services, and the

13    hazardous waste generated by the industrial waste management services.  It is true

14    enough, for example, that Exhibits C and D of the First Ross Declaration set forth a chart

15    demonstrating that 85.7% of Wamboldt's days each month were spent transporting

16    hazardous materials from "customers to branch."  Critically, though, this same chart does

17    not clearly distinguish what portion of the hazardous materials transported from customers

18    to branch included parts washing hazardous waste, and what portion of the hazardous

19    materials transported from customers to branch related to industrial waste management

20    hazardous waste.  Yet even Safety-Kleen states in its original motion for summary

21    judgment that *both* the parts washing and the industrial waste management services

22    involved some transfer of waste *from customer to the branch.*  See Motion for Summary

23    Judgment/Partial Summary Judgment at 4:28-5:16 (explaining that CSRs bring used

24    cleaning solvent in drums from customers back to the branch as part of the parts washing

25    services); cf. 6:23-7:3 (explaining that CSRs also transport drums and plastic containers of

26    waste from customers back to the branch as part of the industrial waste management

27    services).  Accordingly, Safety-Kleen's only proof that Wamboldt spent 85.7% of his days

28

9

United States District Court

For the Northern District of California

transporting hazardous waste relating to the *industrial waste services specifically*, is Safety-Kleen's new assertion that this is so. This is insufficient. As such, a material dispute of fact continues to exist.[3]

Safety-Kleen's counsel attempted to explain the "new" significance of this "old" evidence at the hearing on the instant motion, and again attempted to overcome the above-noted deficiencies, in a subsequent exchange of letters sent by the parties to the court. None of Safety-Kleen's post-hearing explanations were helpful, however. Morever, counsel's explanations cannot substitute for evidence that is more properly obtained from a witness with personal knowledge of the facts submitted.

Even putting the above evidence aside, the court also finds that Wamboldt's original declaration does appear to dispute the hazardous nature of any material that Wamboldt drove *back* from the customers. For example, Wamboldt's original declaration stated that: "used dirt, oil and grease are generally not considered hazardous;" that "that is what is removed by Safety-Kleen's parts washing solution;" that Safety-Kleen "required [him] to complete a pre-prepared manifest which would state that the return drum of used non-hazardous aqueous solvent was 'hazardous';" and that some of Wamboldt's customers also recognized that the waste they gave Wamboldt to transport back to the branch was not actually "hazardous." See First Wamboldt Decl., ¶ 12. While it is clear, from this, that some of the material Wamboldt took back from customers to the branch included drums that relate to the parts washing solution only, it is also true that Wamboldt states that some of the waste he was transporting from customers back to the branch – *without* distinction as to whether it was parts washing or industrial waste – was not actually hazardous. As such, it is a disputed issue, what portion of waste Wamboldt took back to the branch that was related to industrial waste management services, and furthermore constituted hazardous

_____

[3]    Indeed, Safety-Kleen's failure to make the evidentiary distinction it seeks the first time around likely explains why the court failed to pick up on the distinction in the first place. Given this, the court is at a loss as to why Safety-Kleen did not simply submit new evidence showing that the 85.7% applied solely to the industrial waste management services.

1 waste.

2        Furthermore, the declaration submitted by Wamboldt in connection with the present

3 motions also states:  that "driving hazardous materials was not my primary, nor even

4 regular, job duty in that it constituted a very small part of my day;" that the "'safety-affecting'

5 duty of driving with hazardous materials comprised a very small part of those days that I

6 actually did carry any such materials, and on many days, I carried no hazardous materials

7 at all;" and that on the days that Wamboldt did carry hazardous waste back to the branch,

8 "the quantities transported back to the branch were so minimal."  <u>See</u> Declaration of Steven

9 Wamboldt in Opposition to Second Motion for Summary Judgment ("Second Wamboldt

10 Decl."), ¶¶ 2-3.  In other words, Wamboldt states that he was not regularly engaged in the

11 transportation of hazardous materials, without distinction as to whether this includes the

12 transportation of parts washing hazardous materials or industrial waste hazardous

13 materials.  Taking this evidence in plaintiff's favor, as the court is required to do, the

14 evidence suggests that Wamboldt was *not* regularly engaged in the transportation of

15 hazardous materials, regardless whether such transportation dealt with parts washing

16 hazardous materials or industrial waste hazardous materials.

17        On the whole, therefore, and given the lack of clarity that continues to exist with

18 respect to this issue – despite Safety-Kleen's initial promise of a critical distinction between

19 waste services – the court continues to find that a material dispute of fact exists as to

20 whether Wamboldt was regularly engaged in the transportation of hazardous waste, such

21 that the California motor carrier exemption applies.

22              b.     legal standard applicable to the exemption

23        Related to the above discussion is the question of what legal standard will ultimately

24 apply in determining whether Wamboldt is covered by the California motor carrier

25 exemption.  By way of the present motion, Safety-Kleen specifically requests that the court

26 determine now whether drivers are subject to California's motor carrier exemption on the

27 days in which they do not transport hazardous materials.  Safety-Kleen contends that

28

**United States District Court**
For the Northern District of California

1   California's motor carrier exemption should be construed similarly to the federal motor

2   carrier exemption, which applies as long as drivers spend any portion of their time regularly

3   engaged in safety-affecting activities, regardless whether there may be some entire days or

4   weeks that go by without engaging in the activity.  To that end, Safety-Kleen also argues

5   that in order to demonstrate that the California motor carrier exemption applies, it need only

6   prove that Wamboldt may have carried hazardous materials on a given percentage of total

7   workdays, without regard to the percentage of hazardous materials that Wamboldt may

8   have carried on a given workday.  Wamboldt, naturally, disputes these contentions.

9       As a general matter, Safety-Kleen is correct that the California motor carrier

10   exemption parallels the federal motor carrier exemption.  See Collins v. Overnite Transp.

11   Co., 105 Cal. App. 4th 171, 175 (2003)(describing California motor carrier exemption as

12   being "based on" federal motor carrier regulations and "parallel" California regulations).

13   Indeed, Vehicle Code § 34501, on which the California regulations of the state motor carrier

14   exemption are based, expressly states that the California exemption is based on the federal

15   regulations.  See Cal. Vehicle Code § 34501.2 ("regulations adopted under Section 34501

16   for vehicles engaged in interstate or intrastate commerce shall establish hours-of-service

17   regulations for drivers of those vehicles that are consistent with the hours-of-service

18   regulations adopted by the United States Department of Transportation in Part 395 of Title

19   49 of the Code of Federal Regulations").  Safety-Kleen is also correct that this justifies

20   looking to interpretations of the federal exemption for guidance.  See Monzon v. Schaefer

21   Ambulance Serv., Inc., 224 Cal. App. 3d 16, 31 (1990)("Federal decisions have provided

22   reliable authority to California courts in the interpretation of state labor law provisions which

23   have language that differs from, but parallels that of the federal statutes"); see also Bell v.

24   Farmers Ins. Exchg., 87 Cal. App. 4th 805, 816 (2001)(same).

25       However, it is equally true that federal guidance is only helpful to the extent that the

26   parallel laws are "*not inconsistent* with state wage and hour provisions...".  87 Cal. App. 4th

27   at 816 (emphasis added).  To that end, Wamboldt has correctly noted that the Ninth Circuit

28

12

United States District Court

For the Northern District of California

1  has previously found the California motor carrier exemption to be narrower than the federal

2  motor carrier exemption.  In Watkins v. Ameripride, for example, the Ninth Circuit noted that

3  the California exemption applies only where the hours of service of an employee are

4  "actually regulated," whereas the federal exemption applies wherever the Secretary of

5  Transportation has "power" to regulate an employee's hours of service.  See 375 F.3d 821,

6  830 (9th Cir. 2004).  This was based on directly contrary language set forth in both

7  exemptions.

8       In sum, then, the general rule the court can extrapolate is as follows:  generally, the

9  parallel nature of the two exemptions warrants using decisional law interpreting the federal

10  exemption as a guide in interpreting the state exemption.  However, where there is a

11  material point of difference, or inconsistency, in the goals or aims of the two sources of law,

12  federal law ceases to act as a meaningful guidepost.

13       Applying this rule here, the court first concludes that interpretation of the federal

14  motor carrier exemption is relevant with respect to the amount of time that Wamboldt must

15  transport hazardous materials – as a regular part of his duties – in order to qualify under

16  the exemption to begin with.  Given, however, that the amount of time that Wamboldt

17  actually drove hazardous materials is in dispute, see discussion above, this issue cannot

18  be resolved on summary judgment.  Nonetheless, federal law will ultimately provide the

19  relevant guideposts when the issue is to be resolved by the trier of fact.  It is useful to note,

20  moreover, that under the federal case law interpreting the federal exemption, courts have

21  found that 4% total driving time, and driving as a "principal employment" duty, satisfy the

22  exemption.  See, e.g., Morris v. McComb, 332 U.S. 422 (1947); see also Kerr v. Jeans, 193

23  F.2d 572, 573 (5th Cir. 1952).

24       With respect to the other critical legal issue raised by the parties, however – i.e.,

25  whether the exemption applies on days that Wamboldt did not transport hazardous

26  materials, as opposed to weeks when he did not transport hazardous materials – the court

27  finds that the relevance of federal law interpreting the federal motor carrier exemption

28

United States District Court
For the Northern District of California

1    diminishes.  For, as plaintiff points out, California and federal law are materially different

2    with respect to overtime standards.  California has a daily overtime requirement, whereas

3    federal law provides for a weekly overtime requirement.  As such, the logical conclusion to

4    be reached vis-a-vis the California motor carrier exemption is that California more broadly

5    awards overtime for days in which drivers are not covered by the exemption.  This

6    conclusion is also in accord with the Department of Labor Standards Enforcement ("DLSE")

7    manual provisions regarding overtime for truck drivers, which states that "any driver who

8    does not drive or operate a truck for any period of time during an entire workday is entitled

9    to overtime premium compensation for all overtime hours worked performing duties other

10   than driving during that day."  See Declaration of Barron E. Ramos in Opposition to Motion

11   for Summary judgment/Partial Summary Judgment ("Ramos Decl."), Ex. D at 50.9.2.1.  The

12   DLSE manual cites to Crooker v. Sexton Motors, 469 F.2d 206 (1st Cir. 1972) in support of

13   this provision.  Crooker, in turn, held that in work weeks in which the employee performed

14   no interstate driving subject to the federal motor carrier exemption, the employee is entitled

15   to overtime and is not exempt for those weeks.  Given that Crooker dealt with the federal

16   exemption – which is premised upon a weekly overtime basis – the DLSE manual's

17   comment and citation to Crooker can be harmonized without issue.

18        In sum, the court finds that, under the proper legal standard, Wamboldt would be

19   entitled to overtime for days in which he did not transport hazardous materials.

20        C.    Motion for Summary Judgment

21        In addition to seeking reconsideration of the court's August 21 order, Safety-Kleen

22   also moves for summary judgment, arguing that the California motor carrier exemption

23   applies for the additional and independent reason that Wamboldt's hours of service were

24   regulated by United States Department of Transportation Code of Federal Regulations,

25   Title 49, Sections 395.1 to 395.13 ("DOT Regulations").  See Cal. Code Regs. tit. 8, §

26   11070 (3)(K)(2) ("Wage Order 7")(state overtime provisions "are not applicable to

27   employees whose hours of service are regulated by ... [t]he United States Department of

28

14

**United States District Court**

For the Northern District of California

1    Transportation Code of Federal Regulations, Title 49, Sections 395.1 to 395.13, Hours of

2    Service of Drivers ... *or* Title 13 of the California Code of Regulations, subchapter 6.5,

3    Section 1200...").  In so arguing, Safety-Kleen for the first time invokes the first of the

4    alternative prongs set forth in the California motor carrier exemption, which depends on

5    proof of federal – as opposed to state – regulation.[4]

6          Sections 395.1 to 395.13 of the Code of Federal Regulations establish the federal

7    maximum hour restrictions for employees of motor carriers.  The regulations are applicable

8    to qualifying "motor carriers" and "drivers" engaged in interstate commerce.  See 49 C.F.R.

9    §§ 395.1, 390.5 (commercial vehicle and driver definitions).  As defined by the regulations,

10    a "motor carrier" is a person who provides transportation of "property" by "commercial

11    motor vehicle," while a "driver" is a person who similarly operates a "commercial motor

12    vehicle."  See 49 C.F.R. § 390.5.  A "commercial motor vehicle" is in turn defined as a

13    motor vehicle "used on a highway in interstate commerce to transport ... property when the

14    vehicle (1) has a gross vehicle weight ... of (10,001 pounds) or more...."  See id.  Thus, in

15    determining whether Wamboldt's hours of service were regulated by sections 395.1 to

16    395.13 of the Code of Regulations – and whether, therefore, the California motor carrier

17    exemption applies – the court must initially determine whether Wamboldt transported

18    property in interstate commerce in a vehicle weighing more than 10,001 pounds, or

19    otherwise operated such a vehicle in interstate commerce.

20          Safety-Kleen sets forth the following facts:  that all of Safety-Kleen's CSRs in

21    California drive either bread trucks or route trucks – both of which weigh over 10,001

22    pounds; that on 76.4% of his working days, Wamboldt – a CSR – picked up waste products

23    from Safety-Kleen customers in California, which products were pre-routed for and

24    ultimately shipped to locations outside the state of California; that Wamboldt subsequently

25

26    [4]    In all prior motion practice before the court, Safety-Kleen expressly disavowed
any reliance on the first prong of the California motor carrier exemption.  By way of explanation

27    for its sudden reversal on this point, Safety-Kleen asserts that it only recently revisited the
issue and determined for the first time that Wamboldt "is in fact also exempt under the first

28    prong."  See Mot. Leave to File Mot. for Reconsideration at 9:9-11.

United States District Court

For the Northern District of California

1   transported the products to his branch in California, where they were off-loaded from his

2   truck; and that the products were then transported by other truckers out of state.  See

3   Hawkins Decl. ISO Reconsideration and MSJ, ¶ 5; see also Third Declaration of Billy Ross

4   ISO Motion for Reconsideration and Summary Judgment ("Third Ross Decl."), ¶¶ 2-5, Exs.

5   F-G.  All of which, according to Safety-Kleen, supports the conclusion that Wamboldt was

6   engaged in driving a qualifying commercial vehicle in interstate commerce.

7        Wamboldt disputes this conclusion, for two reasons.  First, Wamboldt disputes that

8   the waste he collected was ever transported out of state, claiming instead that the vast

9   majority was taken to "accumulation centers" in California, where it stayed indefinitely

10  before eventually being transferred to one of two recycling centers either in Reedley or

11  Compton, California.  See Second Wamboldt Decl., ¶¶ 4-5.  Second, Wamboldt points to

12  the Ninth Circuit's interpretation of the federal motor carrier exemption.  Per the relevant

13  case law, where a driver has not himself driven in interstate commerce, evidence must be

14  presented that (a) the motor carrier has engaged in interstate commerce and (b) that the

15  driver could reasonably have been expected to make one of the carrier's interstate runs.

16  Here, however, Safety-Kleen has submitted no evidence that Wamboldt was ever asked to

17  transport anything across state lines, or that he could have been reasonably expected to do

18  so.  Accordingly, the federal motor carrier exemption cannot apply.  And since the

19  California motor carrier exemption is narrower, it cannot apply, either.

20       With respect to the first issue – i.e., whether Wamboldt in fact transported property

21  in interstate commerce – the court must evaluate the significance of the parties' competing

22  evidence.  In doing so, the court finds guidance in the Ninth Circuit's opinion in Watkins.

23  See 375 F.3d 821.  There, the Ninth Circuit considered the same issue now before this

24  court – namely, whether a CSR plaintiff was a qualifying driver pursuant to Part 395 of the

25  DOT Regulations, such that the first prong of the California motor carrier exemption was

26  satisfied.  The Watkins court held that, in order to determine whether a CSR plaintiff is a

27  qualifying "driver" engaged in interstate commerce under the regulations, courts must

28

16

United States District Court

For the Northern District of California

1    "examine the character of the shipments [the driver is] charged with delivering, and the

2    intent of the shippers as to the ultimate destination of the goods." See id. at 825.  Such a

3    determination can only be made "after considering the entire panoply of 'facts and

4    circumstances surrounding the transportation.'" Id.

5          Watkins reversed the district court's grant of summary judgment with respect to the

6    plaintiff's overtime claim, holding that a material dispute of fact existed regarding "the extent

7    to which the deliveries made by [plaintiff] as an Ameripride employee were of an interstate

8    character." Id. at 829.  While defendant had presented some evidence of interstate

9    deliveries, plaintiff had submitted an affidavit demonstrating, in part:  that the majority of

10   plaintiff's work (he was a CSR for a uniform cleaners' service) consisted of delivering clean

11   uniforms and picking up dirty uniforms; that less than 3% of plaintiff's work involved the

12   delivery of new uniforms and products to customers on his route; and that with respect to

13   the delivery of new materials to customers, the new materials had been delivered from out

14   of state to the warehouse, where they sat until a particular customer made an order for the

15   new material, at which point plaintiff would take the new material from warehouse

16   inventory.  See 375 F.3d at 827.  In the court's view, the evidence warranted a trial by jury.

17         Here, the evidence appears to be disputed in much the same way as in Watkins.

18   Safety-Kleen, for example, has submitted evidence as to the interstate nature of

19   Wamboldt's deliveries.  Namely, it has submitted evidence that with respect to the *industrial*

20   *waste management services*, the material that CSRs picked up from customers was pre-

21   routed for ultimate transport to treatment and disposal locations, some of which were

22   outside the state.  See Third Ross Decl., ¶¶ 2, 4-5; see also Third Ross Decl., Exs. F-G.

23   Wamboldt, by contrast, has submitted a declaration[5] stating that the "vast majority" of

24   waste he collected was *not* transported out of state, but was instead taken to "accumulation

25   centers" in Santa Ana or El Monte, where it stayed indefinitely before eventually begin

26

27         [5]      Safety-Kleen argues that this declaration should be stricken, for lack of

28   foundation and/or personal knowledge.  The court OVERRULES this objection.

United States District Court

For the Northern District of California

1    transferred to one of two California recycling centers. See Second Wamboldt Decl., ¶ 5.

2    Wamboldt acknowledges that at least some waste was transferred out of state, but avers

3    that the amount is extremely small. See id. Taken as a whole, these facts establish a

4    material dispute of fact as to the ultimate "character" of the shipments that Wamboldt was

5    delivering, and even more significantly, as to whether the deliveries can properly be

6    "characterize[d] ... as within the 'practical continuity of interstate movement'." As the Ninth

7    Circuit in Watkins noted, the issue whether deliveries are truly interstate in nature is

8    fundamentally a factual one. The court therefore concludes that a dispute of material fact

9    exists on this point.

10        As to the second issue raised by Wamboldt – whether defendant must also

11   demonstrate that Safety-Kleen engaged in interstate commerce and that Wamboldt could

12   reasonably be expected to engage in interstate runs – Wamboldt relies on the Ninth

13   Circuit's decision in Reich v. Am. Driver Service. See 33 F.3d 1153, 1156 (9th Cir. 1994)("if

14   jurisdiction is claimed over a driver who has not driven in interstate commerce, evidence

15   must be presented that the carrier has engaged in interstate commerce and that the driver

16   could reasonably have been expected to make one of the carrier's interstate runs."). Reich

17   interpreted the federal motor carrier exemption, and attempted to delineate the standard

18   under which carriers' employees are determined to be subject to the jurisdiction of either

19   the Secretary of Labor or the Secretary of Transportation, since employees cannot be

20   subject to both.[6] See id. at 1155-56. Generally, Reich noted, even a "minor involvement in

21   interstate commerce as a regular part of an employee's duties can subject that employee to

22   the Secretary of Transportation's jurisdiction." Id. However, "if the employee's minor

23   involvement can be characterized as de minimis, that employee may not be subject to the

24   Secretary of Transportation's jurisdiction at all." Id.

25        Reich adopted the Federal Highway Administration's ("FHA") interpretation that the

26

27        [6]    It is the Secretary of Transportation's jurisdiction that must be triggered in order
     for the federal motor carrier exemption to apply. See 49 U.S.C. § 10521.

28

**United States District Court**

For the Northern District of California

1   Secretary of Transportation's jurisdiction, which extends over interstate commerce

2   activities, applies to a motor carrier where it has engaged in interstate commerce "within a

3   reasonable period of time prior to the time at which jurisdiction is in question." Id. To the

4   extent, however, that jurisdiction is sought over a driver who has only participated in

5   intrastate commerce, Reich noted that the FHA's interpretation requires that not only must

6   the carrier have engaged in interstate commerce, but the driver must have reasonably

7   been expected to make one of the carrier's interstate runs. Id.

8        The court finds Wamboldt's reliance on Reich here, unpersuasive. To begin with,

9   Wamboldt relies on a passage in Reich that cites to the Federal Highway Administration's

10  interpretation regarding the Department of Transportation's jurisdiction – an interpretation

11  which the Reich court did *not* expressly adopt. Furthermore, the Reich court noted that the

12  "reference to 'reasonable expectations' concerns claims of jurisdiction over a motor

13  carrier's drivers who have not driven in interstate commerce *when there is evidence that*

14  *other drivers employed by the motor carrier have driven in interstate commerce.*" See 33

15  F.3d at 1157 (emphasis added). Here, however, there is no evidence submitted by either

16  party that affirmatively establishes that other drivers employed by Safety-Kleen have driven

17  in interstate commerce. There is a vague allusion to "truckers" who pick up the waste that

18  CSRs deliver to the branch, for ultimate delivery to treatment and disposal facilities that are

19  interstate. See Third Ross Decl., ¶¶ 2, 4-5. However, there is no statement as to whether

20  these truckers are Safety-Kleen's employees, whether they in fact drive in interstate

21  commerce, and deliver the waste to out of state facilities. As such, there is no evidence

22  that would support application of the "reasonable expectation" requirement that Wamboldt

23  relies on, even if this court assumes that the requirement was implicitly adopted by the

24  Reich court.

25       In sum, the relevant question remains whether Wamboldt's involvement in interstate

26  commerce as a regular part of his duties can subject him to the Secretary of

27  Transportation's jurisdiction, and to the federal motor carrier exemption. For the reasons

28

19

United States District Court

For the Northern District of California

noted above, and for the reasons also noted in connection with the present motion for reconsideration, there is simply too much ambiguity and lack of clarity in the evidentiary record for the court to determine that undisputed facts disclose the portion of Wamboldt's duties that can be characterized as interstate in nature.  Accordingly, the court cannot determine, at this juncture, whether he is a driver engaged in the transport of interstate commerce, such that the DOT regulations set forth at Part 395 apply.  By extension, the court is also unable to determine whether the California motor carrier exemption, pursuant to the first prong, applies.[7]

Summary judgment on this ground is therefore DENIED.

D.    Conclusion

For the foregoing reasons, defendant's motion for reconsideration is DENIED.  Defendant's accompanying motion for summary judgment is also DENIED.  The court will entertain no further dispositive motions until discovery has been completed.  One final motion per party may be filed after the close of discovery, to be heard no later than 120 days before trial.

Furthermore, to the extent that defendant's motion for leave to seek reconsideration of the court's August 21, 2007 order denying summary judgment also sought, in the alternative, an order certifying the issues presented therein for interlocutory appeal, and to the extent defendant would seek as much here, the court DENIES the request.  Given the court's obligation to reach a final decision as to application of the California motor carrier exemption once the factual record is fully established, the issues presented here are not appropriate for appellate review.  To that end, the court's discussion of the legal standard applicable to the exemption at issue is dicta, until such time as the court may render a final conclusion on the matter.

---

[7]    To the extent that the parties have also raised arguments with respect to whether the California motor carrier exemption applies on days in which Wamboldt was not engaged in the transport of interstate commerce under the DOT regulations, the same observations made by the court in connection with the motion for reconsideration apply here (i.e., California's daily overtime rule shall govern the analysis).

Finally, the court additionally instructs the parties to attend a further case
management conference in this matter, to be held on April 10, 2008, at 2:30 p.m.

**IT IS SO ORDERED.**

Dated: March 17, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge