1   DONALD S. EDGAR (State Bar No. 139324)
    JEREMY R. FIETZ (State Bar No. 200396)
2   J. REX GRADY (State Bar No. 232236)
    EDGAR LAW FIRM
3   408 College Avenue
    Santa Rosa, California 95401
4   Telephone: (707) 545-3200/Facsimile: (707) 578-3040

5   DAVID R. MARKHAM (State Bar No. 071814)
    R. CRAIG CLARK (State Bar No. 129219)
6   CLARK & MARKHAM LLP
    600 "B" Street, Suite 2130
7   San Diego, CA 92101
    Telephone: (619) 239-1321/ Facsimile: (619) 239-5888
8
    BARRON E. RAMOS (State Bar No. 179620)
9   LAW OFFICES OF BARRON E. RAMOS
    Attorney at Law, A Professional Corporation
10  132 N. El Camino Real, # 303
    Encinitas, California 92024
11  Telephone: (858) 461-0500/Facsimile: (760) 994-1354
    Attorneys for plaintiff Steven Wamboldt and the Class
12

13
14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16  STEVEN WAMBOLDT, an individual,              ) Case No. C 07-00884 PJH
    on behalf of himself, those similarly situated and )
17  on behalf of the general public,            ) **CLASS ACTION**
                                                 )
18              Plaintiff,                        ) PLAINTIFF'S MEMORANDUM IN
                                                 ) OPPOSITION TO MOTION FOR
19       v.                                       ) DECERTIFICATION
                                                 )
20  SAFETY-KLEEN SYSTEMS, INC., a                )
    Wisconsin corporation, and DOES 1 through    ) Date: July 7, 2010
21  100, inclusive.                              ) Time: 9:00 a.m.
                                                 )
22              Defendants.                       ) Judge: Hon. Phyllis J. Hamilton
                                                 ) Dept.:
23                                               )
                                                 )
24                                               ) Trial Date: None Set
                                                 ) Complaint Date: Nov. 17, 2006
25                                               )
                                                 )
26  ─────────────────────────────────────────────

27
28

TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . .2

II.    CSRS WERE REQUIRED TO BE PAID FOR EVERY HOUR WORKED,
       WHETHER AT A PREMIUM RATE OR AT REGULAR HOURLY RATES. . . . . . . . . 5

III.   PREDOMINANCE EXISTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

IV.    THE QUANTUM OF DAMAGES IS A SIMPLE FUNCTION OF HOW MANY
       HOURS CSRs WORKED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

V.     PLAINTIFF'S SUMMARY TRIAL PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

VI.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

1

# TABLE OF AUTHORITIES

2

*Cases:*

3

*California:*

4
5

Bell v. Farmer Ins. Exchange
  (2001) 87 Cal.App.4th 805, 811-812. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

6
7

Bell v. Farmers Ins. Exchange
  (2004) 115 Cal. App. 4th 715, 747-755. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

8
9

California Manufacturers Assn. v. Public Utilities Commission
  24 Cal. 3d 836, 844 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

10

Cal. State Employees' Ass'n v. State Pers. Bd.
  (1986) 178 Cal. App. 3d 372 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11
12

Cicairos v. Summit Logistics, Inc.
  133 Cal.App.4th 949, 959 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

13
14

Gomez v. Lincare
  (2009) 173 Cal.App.4th 508 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 13, 18

15
16

Hernandez v. Mendoza
  (1988) 199 Cal.App.3d 721, 727. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

17

Kopping v. Workers' Comp. Appeals Bd.
  (2006) 142 Cal. App. 4th 1099, 1110. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18
19

People v. Arias
  (2008) 45 Cal. 4th 169, 180 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20
21

Reno v. Baird
  (1998) 18 Cal.4th 640, 658 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

22

Said v. Jegan
  (2007) 146 Cal. App. 4th 1375 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

23
24

Sav-On Drug Stores, Inc. v. Superior Court
  34 Cal.4th 319, 335 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

25
26

Woodmansee v. Lowery
  (1959) 167 Cal. App. 2d 645 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

27

*Federal:*

28

Abshire v. County of Kern
  908 F.2d 483, 486 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

Alvarez v. IBP, Inc.
    339 F.3d 894, 901, 914-15 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Anderson v. Mt. Clemens Pottery Co.
    (1946) 328 US 680, 687 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Bishop v. Petro-Chemical Transport, LLC
    582 F.Supp.2d 1290 (E.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Dauphin v. Chestnut Ridge Trans.
    2009 U.S. Dist. LEXIS 74483 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Estate of Marcos Human Rights Litig.
    910 F. Supp. 1460, 1464-65, 1469 (D. Haw. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

In Re Wells Fargo Home Mortgage
    571 F.3d 953 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 17

Kimball v. Goodyear Tire and Rubber Co.
    504 F.Supp 544 (E.D.Tex 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Klitzke v. Steiner Corp.
    110 F.3d 1465, 1469-70 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Reeves v. International Tel. and Tel. Corp.
    (9th Cir. 1980) 616 F.2d 1342, 1351 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Sullivan v. Kelly Services, Inc.
    (N.D.Cal. 4-27-2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Windham v. American Brands, Inc.
    565 F.2d 59, 68 (4th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

SECONDARY SOURCES

29 CFR. 541.602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 6

Black's Legal Dictionary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

DLSE Enforcement Manual (2002) at p.50-2, para. 503.(9). . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Handbook of Statutory Construction, 2nd Ed. (1911) West Publishing, §60, p. 165 . . . . . . . . . . . 10

Labor Code §204(a)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Wage Order § 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

PLAINTIFF'S MEMORANDUM IN OPPPOSTION TO MOTION FOR DECERTIFICATION

1   **I. INTRODUCTION AND SUMMARY OF ARGUMENT**

2     In its motion to decertify the class, Safety-Kleen argues that common proof cannot be used

3   to determine whether CSRs worked overtime hours, whether CSRs transported materials moving in

4   interstate commerce, whether CSRs drove trucks of a particular weight, and whether CSRs drove

5   hazmat on any given day.  In essence, Safety-Kleen argues that since it did not maintain records of

6   hours worked (as it was required to by law), and since it maintains its other records (of who carried

7   what when) in a haphazard manner, the class should get nothing.  Safety-Kleen is wrong.

8     As a preliminary matter, Safety-Kleen's decertification motion completely ignores

9   Plaintiff's core claim that he and the class were "hourly employees" but were not paid for every

10  hour worked.  Wamboldt's First Amended Complaint (FAC), filed over *three years ago*,

11  specifically states that Wamboldt was "an hourly employee" and states the claim that he and the

12  class are entitled to pay for all hours worked, whether that pay is characterized as "premium pay,"

13  "overtime pay," "all wages" due, or anything else.  FAC, paras. 10, 14 – Docket #30.  As the

14  applicable wage order makes plain, the driver exemption from premium pay *does not apply* to

15  paying hourly employees for every hour worked or for reporting time pay.

16    Just as the California Labor Commissioner determined in this very case, plaintiff and the

17  class were hourly (not salaried) employees, but were not paid for every hour worked.  As plaintiff

18  argued long ago in successfully opposing Safety-Kleen's motion for summary judgment, it does

19  not matter that Safety-Kleen told the CSRs they were being paid a "salary."  CSRs' paystubs

20  clearly show an hourly rate of pay, show deductions for half days taken off in violation of the

21  salary test (as set forth by the Dept. of Labor [DOL], the Ninth Circuit, and 29 CFR. 541.602), and

22  show payment to CSRs of overtime when they worked a half day on Saturdays.  According to the

23  DOL and the Ninth Circuit, these facts are "antithetical" to the payment of a salary.  On this basis

24  alone, the motion to decertify must be denied since which CSR carried hazmat on any given day

25  and in what vehicle is *irrelevant* to plaintiff's core claim that he and the class were hourly

26  employees yet not paid for every hour worked.  *There is no exemption from paying hourly*

27  *employees for every hour worked.*

28

1    Labor Code sections 204(a) and 204(b) require timely payment of all wages due, including

2    payment for wages earned for labor in excess of the normal work period.  The hazmat driver

3    exemption upon which Safety-Kleen relies does not apply to Labor Code section 204.  Likewise,

4    Labor Code sections 226(a) and 226(b) require that an employer report and pay for all hours

5    worked unless an employee is "salaried."  Plaintiff's claim that the class members are "hourly" and

6    not "salaried" under the Ninth Circuit and DOL test.  Thus, the first two-thirds of plaintiff's

7    damage claim[1] (regular pay for each hour worked equals two thirds of the premium rate of time

8    and a half) has nothing to do with carrying hazmat since that claim is dependent solely on whether

9    CSRs were, in fact, hourly employees.

10    As for plaintiff's *additional* theory that he and the class are *also* entitled to a premium rate

11    of pay for every hour of overtime worked, it is Safety-Kleen's burden to prove the existence of an

12    applicable exemption.  However, there is no requirement that Safety-Kleen use the most inefficient

13    means to do so.  The Court has the inherent power to determine how evidence shall be presented -

14    which plaintiff believes should be through simple summary exhibits.  In fact, plaintiff is willing to

15    stipulate to the applicability of the exemption from the premium rate of pay on any day Safety-

16    Kleen has documentary evidence that a CSR either carried hazmat or drove a truck meeting the

17    threshold size necessary to trigger the driver exemption.  Safety-Kleen admits it is required by law

18    to maintain records of who carried what when (and what size truck was used).  Decert. Motion at

19    p.9:1-4 – Docket #142.

20    This is not a misclassification case where the individual job duties of each class member

21    must be examined.  This is a failure to pay overtime case where the exemption exists or it does not

22    based upon facts that can be ascertained directly from the defendant's **written records**.  Safety-

23

24    [1] For example, if a CSR was paid $ 15.38 per hour (as the paystubs indicate), the CSR would be
25    entitled to $ 15.38 per hour for every hour worked over 8 in a day and 40 in a week, even if they
drove hazmat or a truck of a particular size, since they are hourly employees.  If the exemption
26    from premium pay exists on a given day, they are limited to that $ 15.38 per hour worked.  If it
does not exist on certain days, they are entitled to time and a half, or roughly $ 23.07 per hour.
27

28

1   Kleen can specifically identify from its own records which days it has evidence of the existence of
2   the exemption. That mechanical exercise can be done through the use of summary exhibits and
3   stipulated facts.

4       The only records that do not exist here are those that Safety-Kleen was required by law to
5   maintain: hours worked. However, the law is well settled that an employer's failure to maintain
6   accurate time records does not magically absolve it of liability to its employees. Rather, statistical
7   analysis based upon more generalized data is expressly permitted in such cases. Here, plaintiff's
8   statistician has determined from examining dozens of Safety-Kleen's own submitted declarations
9   (both CSRs and branch managers) that CSRs worked an average of 10.33 hours per day. Thus,
10  each class member's damages are easily computed. CSRs are entitled to payment at their regular
11  hourly rate for each hour of overtime worked (the first 2/3 of the possible damages alleged). And
12  for those days that Safety-Kleen has no evidence of the existence of the hazmat driver exemption,
13  CSRs are *also* entitled to an additional premium rate (time and a half) for each hour worked (the
14  additional 1/3 of the possible damages alleged).

15      In sum, Safety-Kleen's decertification motion is completely silent on plaintiff's core claim
16  alleged in the FAC over three years ago and already briefed in this case: that he was an hourly
17  employee and not paid for every hour worked. There is no exemption from paying hourly
18  employees for every hour worked. That claim can be adjudicated on a classwide basis. Plaintiff's
19  additional theory that he and the class are also entitled to a premium rate for every hour worked can
20  also be tried on a classwide basis since plaintiff will stipulate to the existence of the exemption on
21  those days that Safety-Kleen can provide the required documentary evidence. Simple summary
22  exhibits and stipulated facts can be used at trial. Safety-Kleen either has the required documentary
23  evidence, or it does not. On those days it does not, plaintiff and the class are entitled to a premium
24  rate of pay for every hour worked.

25      Safety-Kleen's Motion should be denied and a trial date set.

26

27

28

## II. CSRs WERE REQUIRED TO BE PAID FOR EVERY HOUR WORKED, WHETHER AT A PREMIUM RATE OR AT REGULAR HOURLY RATES

As the California Labor Commissioner correctly ruled long ago in this very case, Safety-Kleen paid plaintiff and the class by the hour, regardless of what Safety-Kleen now claims and regardless of what it told the class members. In fact, Wamboldt had repeatedly complained to Safety-Kleen that his paystubs clearly showed he was being paid hourly, but that he was not being paid overtime. See e.g., Decl. Wamboldt in Opposition to Safety-Kleen's Second Summary Judgment Motion at Paragraph 6 – Docket #77.

Safety-Kleen always put the number of hours Wamboldt purportedly worked on his paystubs (though grossly understated), and always put the hourly rate he was paid of $ 15.38. See Decl. Wamboldt in Opposition to (original) Summary Judgment, Exhibit A – Docket #54, Wamboldt's paystubs dated 1/15/05, 2/11/05, 3/11/05, 4/08/05,5/06/05. Safety-Kleen's person most knowledgeable twice admitted in deposition that the $ 15.38 figure on Wamboldt's paystub represented Wamboldt's hourly rate of pay. See Decl. Ramos In Opposition To Motion for Summary Judgment, Exhibit A, Depo. Williams, p.207:20, 217:20-23 – Docket #53.

Wamboldt's paystubs even break down his pay by the categories of "regular" pay, "holiday" pay, "vacation" pay, and "sick" pay, each assigned a certain number of hours he took during that particular pay period at his hourly rate of pay. Significantly, Wamboldt's "regular" pay was always reduced by the number of hours he took for vacation or holidays. For example, in the pay period ending 1/5/2005, Wamboldt only worked 68, rather than 80 hours. See Decl. Wamboldt in Opposition to (original) Summary Judgment, Exhibit A – Docket #54. He took time for vacation and for holiday for the other 12 hours, which is a full day and one half day. Wamboldt's "Regular Pay" was thus only for the 68 hours he actually worked, not a flat salary as Safety-Kleen alleges. He was then paid separately from his accrued vacation and holiday time based on his hourly rate and on the exact number of hours taken.

These type of half-day deductions from Wamboldt's paychecks were commonplace. See Decl. Wamboldt in Opposition to Safety-Kleen's Second Summary Judgment Motion at Paragraph

1    7 – Docket #77.   Whenever Wamboldt had to take a half day for personal business, illness, or

2    vacation, Safety-Kleen always deducted the time taken from his "Regular Pay." Id..   In fact,

3    Wamboldt had to get time off authorized in writing, whether for medical, dental, personal or

4    vacation purposes. Id. at Exhibit A. The form required to be completed required Wamboldt to take

5    time off in either 8 hour (full day) or 4 hour (half day) increments and required him to state the

6    specific number of hours he would take off.  Id.  The form also stated that if he had insufficient

7    vacation/sick hours earned, a deduction would be taken "from wages / monies owed the

8    employee." Id.

9         Wage statements that make deductions for periods less than a full day are evidence that the

10   pay was not a salary. *Abshire v. County of Kern*, 908 F.2d 483, 486 (9th Cir. 1990)[The

11   Department of Labor has stated that "deductions from the salary of an otherwise exempt employee

12   for absences of less than a day's duration for personal reasons, or for sickness or disability" are

13   inconsistent with the payment of a salary.]  Indeed, "[s]ubjecting an employee's pay to deductions

14   for absences of less than a day … is completely antithetical to the concept of a salaried employee."

15   Ibid.

16        Likewise, 29 CFR. 541.602 provides that an employee will be considered to be paid on a

17   'salary basis'

18        … if the employee regularly receives each pay period on a weekly, or
19        less frequent basis, a predetermined amount constituting all or part of
          the employee's compensation, which amount is not subject to
20        reduction because of variations in the quality or quantity of the work
          performed. Subject to the exceptions provided in paragraph (b) of
21        this section, an exempt employee must receive the full salary for any
          week in which the employee performs any work without regard to
22        the number of days or hours worked...

23   Here, Safety-Kleen was taking less than full day deductions as evidenced by the one and

24   one half day (12 hours total) deduction taken from Wamboldt's 1/15/2005 wage statement and as

25   evidenced by Safety-Kleen's Time Off/Leave Approval Form which explains Safety-Kleen's

26   policy of deducting half-days taken.  See Leave Form -- Decl. Wamboldt in Opposition to Safety-

27   Kleen's Second Summary Judgment Motion at Exhibit A – Docket #77.  See also wage statement

28

1    evidencing the one and one half day deduction from regular hours paid at Decl. Wamboldt in

2    Opposition to (original) Summary Judgment, Exhibit A – Docket #54.  The fact that he was paid

3    for accrued vacation or sick time does not change the fact that the hours he took for vacation were

4    taken from his "Regular Pay."

5         Similar to these non-salary reductions, the paystubs also indicate that Wamboldt received

6    $ 100 for working on Saturdays.   See e.g., Wamboldt's 1/15/2005 wage statement.  Decl.

7    Wamboldt in Opposition to (original) Summary Judgment, Exhibit A – Docket #54.  Just as is the

8    case for non-salary reductions, likewise, "[a]dditional compensation for extra hours worked is also

9    not consistent with salaried status."  Ibid.

10        Safety-Kleen may attempt to argue that its deductions for absences taken by Wamboldt are

11   not relevant since no actual deductions were ever taken out of Wamboldt's net pay.  But that exact

12   argument has already been considered and rejected in *Abshire*:

13             The County argues that Battalion Chiefs are 'salaried' even though
               their pay is admittedly subject to deductions for part days missed
14             because no such deductions have ever actually been made… That
               Battalion Chiefs will generally accrue sufficient compensatory or
15             leave time to avoid an actual reduction in their take-home pay does
               not change the fact that deductions from pay based on hourly
16             attendance [are taken from their paychecks.  The test to determine
17             whether a salary has really been paid] does not require that a
               deduction for an absence of less than a day actually have been made,
18             but only that an employee's pay be 'subject to' such a deduction.

19             Id. at 487 (Emphasis added)

20        Just as in *Abshire*, here too Wamboldt and the class were "subject to" deductions for

21   absences.  Safety-Kleen's written policy clearly states that the CSRs were subject to such

22   deductions: "In instances where a terminated employee has taken vacation / sick hours not yet

23   earned, SK will make deductions from wages / monies owed the employee."  Decl. Wamboldt in

24   Opposition to Safety-Kleen's Second Summary Judgment Motion at Paragraph 7 and Exhibit A–

25   Docket #77.  Here too, Wamboldt and the class were paid extra for some overtime worked

26   (Saturdays), just not all overtime worked.  Here too, it was Safety-Kleen's policy to take half-day

27   deductions from class members' regular pay if they took a half-day off.  Here too, if class members

28

1   had insufficient accrued vacation/sick time, Safety-Kleen could take time off out of their wages.

2   All of these facts lead to the obvious conclusion that Wamboldt and the class were paid exactly as

3   their paystubs plainly indicate and as the Labor Commissioner correctly concluded long ago: by the

4   hour, and not on a salaried basis.

5           In *Abshire*, the Ninth Circuit read through the fiction created by the defendant that it was

6   paying a "salary," even though that is what the Battalion Chiefs had been told they were paid and

7   even though that is what their wage statements plainly indicated.  Here too, the Court should read

8   through Safety-Kleen's fiction of purportedly paying the Customer Service Representatives a

9   "salary" since the wage statements clearly contradict that position and since the reductions and

10  additions are completely inconsistent with the payment of a salary.

11          In fact, this case is even more egregious than *Abshire* in that here the wage statements

12  clearly state that Wamboldt was paid **by the hour** at a specific **hourly rate of pay** whereas in

13  *Abshire*, the "Battalion Chiefs [were] paid an amount expressed and computed as a biweekly salary

14  ... "  *Abshire*, 908 F.2d at 485.

15          Safety-Kleen has taken the position that it is not subject to the "salary basis test" to

16  establish the existence of the motor carrier exemption (unlike the administrative, professional and

17  executive exemptions).  Safety-Kleen argues there is no need to meet the "salary test" in addition

18  to the "duties test," because unlike the administrative, executive or professional exemption, all of

19  which require the employee to be paid a salary for the exemption from overtime to apply, the driver

20  exemption does not require payment of a salary.  Thus, according to Safety-Kleen, it does not

21  matter whether Wamboldt was actually paid a salary or was an hourly employee – as long as his

22  duties would trigger the exemption.  Safety-Kleen is wrong.  If Wamboldt was paid by the hour, he

23  and the class should have been paid for every hour worked.

24          Wamboldt is not using the salary test to prove the existence or non-existence of an

25  exemption - he is using it to establish exactly **how he was actually paid**.  It does not matter

26  whether Safety-Kleen "told" the CSRs they were paying them a "salary," or that CSRs believed it.

27  If Wamboldt and the class were not paid a salary under the DOL's and Ninth Circuit's test, then

28

1   they were paid by the hour as their paystubs make plain, and are therefore entitled to pay for every

2   hour worked.  The exemption is only as to premium pay (time and a half or double time) under

3   Section 3 of the Wage Orders(s).  It is not an exemption from paying employees for every hour

4   worked.  Thus, *the exemption only determines the quantum of damages, not liability*.  Safety-Kleen

5   conflates the exemption from paying premium pay (time and a half or double time) for overtime

6   hours worked with paying its employees for every hour worked.  <u>There is no exemption from</u>

7   <u>paying an hourly employee for every hour worked.</u>

8        Moreover, the exemption upon which Safety-Kleen relies is narrower than the exemption

9   applicable to administrative, executive and professional employees to whom a salary can be paid

10  and only applies to the payment of premium pay for overtime.  The exemption for drivers is only as

11  to Section 3 of the Wage Order(s), whereas the exemption for administrative, executive or

12  professional is to Sections 3 through 12 of the Wage Order(s).  *Cicairos v. Summit Logistics, Inc.*,

13  133 Cal.App.4th 949, 959 (2005)[the "motor carrier exemption encompass[es] only the provisions

14  of section 3 'Hours and Days of Work' of which it is a part."]; see also DLSE Enforcement Manual

15  (2002) at p.50-2, para. 503.(9)[the "truck drivers'" exemption not applicable to "minimum wage

16  and other provisions…"].

17        For example, employers of administrative, executive or professional employees are exempt

18  from Reporting Time Pay requirements; Safety-Kleen is not.  Employers of administrative,

19  executive or professional employees are exempt from the requirement that those employees be paid

20  their hourly rate of pay "for all hours worked"; Safety-Kleen is not.  Employers of administrative,

21  executive or professional employees are exempt from the requirement of keeping time records

22  indicating when the employee begins and ends his workday and when the employee took his meal

23  periods; Safety-Kleen is not.

24        There obviously would be no need for Reporting Time Pay, or to require pay "for all hours

25  worked" at the employees' rate of pay, or to keep accurate time records of when an employee

26  begins and ends his workday and when he took his meal period, unless it was contemplated that

27  those otherwise "exempt" from premium pay (time and a half or double time) would nonetheless

28

1   still be entitled to be paid for each hour of work.

2        As quasi-legislative regulations, the wage orders are to be construed in accordance with the

3   ordinary principles of statutory interpretation. *Bell v. Farmer Ins. Exchange*, (2001) 87

4   Cal.App.4th 805, 811-812. Accordingly, courts should give meaning to every word of a statute if

5   possible, and should avoid a construction making any word surplusage.' [Citation.]" *Reno v. Baird*

6   (1998) 18 Cal.4th 640, 658. As the Supreme Court recently wrote in *People v. Arias* (2008) 45

7   Cal. 4th 169, 180, regarding statutory construction:

8           First, in reviewing the text of a statute, we must follow the
            fundamental rule of statutory construction that requires every part of
9           a statute be presumed to have some effect and not be treated as
            meaningless unless absolutely necessary. **"Significance should be
10          given, if possible, to every word of an act.** [Citation.] Conversely, a
            construction that renders a word surplusage should be avoided.
11          [Citations.]" [2]

12                              Emphasis Added.

13        As Henry Campbell Black, of *Black's Legal Dictionary,* wrote, "It is the duty of the courts

14   to give effect, if possible, to every word of the written law." Black, Henry Campbell, *Handbook of*

15   *Statutory Construction, 2nd Ed.* (1911) West Publishing, §60, p. 165. Mr. Black further states, "No

16   sentence, clause, or word should be construed as unmeaning or surplusage." Id. Safety-Kleen's

17   interpretation of the exemption is nonsensical as it eliminates express provisions of the Wage Order

18   including Reporting Time Pay requirements and payment "for all hours worked."

19        The applicable Wage Order(s) obviously contemplate that drivers can be, and should be,

20   paid at an hourly rate of pay for every hour worked. Those subject to the exemption are just not

21   entitled to premium (time and half or double time) pay for extra hours worked. They are, however,

22   entitled to be paid for every hour worked if they were, in fact, paid by the hour. At a minimum,

23   Wamboldt and the CSRs should have been paid their stated wage ($ 15.38 per hour) for each hour

24   _____

25   [2]Accord *California Manufacturers Assn. v. Public Utilities Commission*, 24 Cal. 3d 836, 844
     ["Interpretive constructions which render some words surplusage, defy common sense, or lead to
26   mischief or absurdity, are to be avoided."]; *Kopping v. Workers' Comp. Appeals Bd.* (2006) 142
     Cal. App. 4th 1099, 1110; *Said v. Jegan* (2007) 146 Cal. App. 4th 1375; Cal. State Employees'
27   Ass'n v. State Pers. Bd. (1986) 178 Cal. App. 3d 372; *Woodmansee v. Lowery* (1959) 167 Cal.
     App. 2d 645

28

1    worked over 8 hours in a day and over 40 in a week.  It does not matter which CSR carried hazmat

2    on what day or in which truck.  This core issue is completely ignored by Safety-Kleen in its Motion

3    because the claim can easily be determined on a classwide basis.

4    **III. PREDOMINANCE EXISTS**

5           Safety-Kleen argues that it will be cumbersome to meet its burden of proof at trial because

6    it will want to show that (i) each CSR carried hazmat, or (ii) drove a truck of a certain size, or (iii)

7    carried waste destined for interstate commerce.  None of these inquiries undermine the ability to try

8    this matter on a classwide basis.

9           The first and second categories (whether CSRs carried hazmat or drove a truck of a

10   particular size or weight), can be proven by Safety-Kleen through the use of summary exhibits and

11   stipulated facts.  Safety-Kleen's argument that it has the records to meet its burden, but that it

12   wants to waste the Court's time fumbling through those documents at trial rather than preparing a

13   summary exhibit for the class, is obviously not a defense to certification.

14          Safety-Kleen admits that it has the documentary evidence necessary to prove that, on

15   certain days at least, some CSRs carried hazmat.  Likewise, Safety-Kleen admits it has the records

16   necessary to show the size of truck operated by any given CSR on any given day.  Plaintiff does

17   not dispute the accuracy of Safety-Kleen's records.  Thus, no testimony or cross-examination of

18   any CSR is necessary to determine the accuracy of those records.  In fact, plaintiff is willing to

19   stipulate that, on any day where Safety-Kleen has records of a CSR carrying hazmat or otherwise

20   driving a truck meeting the driver's exemption, the exemption from premium pay exists.

21          The third category, whether Safety-Kleen transported waste in interstate commerce, can

22   obviously be disposed of on a classwide basis since the question whether the waste collected by

23   Safety-Kleen CSRs, which was transported to collection centers where it was aggregated, triggers

24   the interstate commerce DOT exemption or it does not.  The focus of the inquiry is on whether

25   Safety-Kleen transports its aggregated waste to another state, not on whether any particular CSR

26   transported waste to another state.  Indeed, Safety-Kleen does not argue that *any* CSR crossed state

27   lines – merely that the waste Safety-Kleen aggregates after collection from all of its CSRs crossed

28

1   state lines. That is obviously amenable to class-wide proof.

2        In *Gomez v. Lincare* (2009) 173 Cal.App.4th 508, a recent analogous case which Safety-

3   Kleen fails to cite, plaintiffs were service representatives whose job duties included driving vans

4   containing liquid oxygen and compressed oxygen, which are defined by the federal government as

5   hazardous materials. Id. at p. 510. Lincare's service representatives sued to recover a "premium

6   rate of compensation, rather than their regular rate of compensation, for all hours worked in excess

7   of eight hours per day or 40 hours per week." Ibid. When plaintiffs made service visits after

8   hours, they were compensated by Lincare at the regular rate of pay. Id. at p. 512. In other words,

9   Lincare was paying these hazmat drivers for every hour they worked – just not at a premium rate of

10   pay (i.e., time and a half or double time).[3]

11        The trial court granted Lincare's motions for summary adjudication of plaintiffs' claim for

12   overtime compensation on the ground that plaintiffs, as drivers of hazardous materials, were

13   covered by the motor carrier exemption and therefore exempt from California's overtime law. In

14   reversing, the *Gomez* court concluded that "Lincare failed to carry its burden of proof to show the

15   motor carrier exemption applied to all of plaintiffs' workdays..." Ibid.

16        Just like Safety-Kleen does here, Lincare argued that, because plaintiffs transported

17   hazardous materials as part of their jobs, they were exempt from California's statutory overtime

18   rules. Id. at p. 515. Lincare offered undisputed evidence that plaintiffs' duties included

19   transporting hazardous materials, including liquid oxygen, and that compressed or liquid oxygen

20   was always carried in the vans driven by plaintiffs. Id. at ftnt. 2. However, "based on the

21   application of the driver's exemption, Lincare was required to present evidence showing that each

22   plaintiff drove a vehicle containing hazardous materials for some period of time on each and every

23   workday." Id. at p. 518.

24        Lincare did not submit evidence to establish that plaintiffs drove vehicles containing

25

26   _____

27   [3] This is exactly what plaintiff alleges should be done here. Unlike Safety-Kleen, Lincare correctly
recognized that the exemption from premium pay does NOT exempt an employer from payment

28   for every hour worked.

1   hazardous materials every day they were scheduled to work (Id. at p. 518), nor was Lincare

2   excused from doing so because it was "burdensome" - as Safety-Kleen's Motion to Decertify asks

3   this Court to do.

4        *Lincare* makes plain that it is Safety-Kleen's burden to prove the existence of the hazmat

5   driver exemption. Here, Safety-Kleen admits it has the evidence to prove the existence of the

6   exemption on some, but not all, days CSRs worked. Motion at p.10:7-8 (the "majority of days")

7   citing Decl. Ross at para. 11; Motion at p.13:21 (the "majority of days"). In other words, Safety-

8   Kleen concedes it cannot meet its burden for each day CSRs worked and therefore concedes that it

9   owes the class overtime at a premium rate of pay for some days worked. Safety-Kleen just does

10  not want to bother making the determination of which days are owed.

11       Since plaintiff will stipulate to the existence of the exemption on days that CSRs carried

12  hazmat and/or drove certain vehicles meeting the exemption, the inquiry is limited to Safety-

13  Kleen's documentary evidence of the existence of the exemption for each class member for each

14  day worked. That evidence can be presented by Safety-Kleen in the form of a summary exhibit

15  and does not require individualized inquiry or testimony of any kind. Safety-Kleen either has the

16  required documentary evidence to support its claimed exemption for each day CSRs worked, or it

17  does not.[4]

18       Safety-Kleen relies primarily on *In Re Wells Fargo Home Mortgage,* 571 F.3d 953 (9th Cir.

19  2009) for the proposition that a company's uniform treatment of class members is insufficient, on

20  its own, to meet Rule 23's predominance requirement. Motion at p.7. Although the trial court

21  concluded that the class in Wells Fargo had "serious issues regarding individual variations among

22  HMC job duties and experiences," the class was nonetheless certified because the trial court relied

23  exclusively on the Wells Fargo's uniform exemption policy. Id. a p.956. Thus, the question before

24

25  [4] The only testimony from CSRs that Safety-Kleen claims would be necessary is if a CSR disputes
26  Safety-Kleen's records that he carried hazmat and if plaintiff called that CSR to the stand to rebut
    Safety-Kleen's records. Motion at p.14:3-5. Since plaintiff will stipulate to the accuracy of Safety-
27  Kleen's records, no such testimony would arise and plaintiff will not be calling any CSR for such a
28  purpose.

1   the Ninth Circuit was "whether the district court abused its discretion in finding Rule 23(b)(3)'s

2   predominance requirement was met based on Wells Fargo's internal policy of treating all HMCs as

3   exempt from state and federal overtime laws." Id. at p.957. The Ninth Circuit concluded that,

4   while uniform application of an exemption was one factor to be considered, "courts must still ask

5   where the individual employees actually spent their time." Id. at p.959. Thus, a determination of

6   how each member of the class actually spent his or her time, which necessarily would require

7   individual testimony of each class member, undermined any potential predominance.

8          Here, no individual testimony is necessary. The exemption upon which Safety-Kleen relies

9   rises or falls on documentary evidence. Contrary to Safety-Kleen's argument, it does not matter

10   "how much time" any CSR spent performing a task or how a CSR "performed his job." Motion at

11   p.7:8-9. As Safety-Kleen admits, it is legally required to maintain all the evidence necessary to

12   demonstrate who carried what on what day and in what truck. Since plaintiff is willing to stipulate

13   to the accuracy of Safety-Kleen's records, liability on any given day comes down solely to whether

14   Safety-Kleen has records establishing the existence of the exemption or not.

15          Safety-Kleen also cites to *Bishop v. Petro-Chemical Transport, LLC*, 582 F.Supp.2d 1290

16   (E.D. Cal. 2008) for the proposition that courts have denied certification where a "defendant

17   demonstrated that individualized inquiry would have to be made on the application of the interstate

18   commerce provisions of the Federal Motor Carrier Exemption." Motion at p.17:12. In *Bishop*,

19   defendant shipped ethanol from the Midwest to California and was then picked up in the "final leg"

20   of the product's journey by drivers who then delivered the product to customers. Id. at p.1303. As

21   the Court in *Bishop* observes (Id. at p.1303), the Ninth Circuit has ruled that intrastate deliveries

22   may be considered in the stream of interstate commerce if the property in question originated from

23   out-of-state, and the intrastate portion of the route is merely part of the final phase of the

24   unmistakably interstate transport. *Klitzke v. Steiner Corp.*, 110 F.3d 1465, 1469-70 (9th Cir. 1997).

25          Defendant provided evidence in *Bishop* that some class members regularly crossed state

26   lines thereby triggering the federal exemption (Id. at p.1300; Id. at ftnt. 1) – no such evidence

27   exists here and none has been proffered by Safety-Kleen in its motion. Also in *Bishop*, numerous

28

1   driver declarations were proffered wherein each driver stated plainly that they reasonably expected

2   to be called upon to drive across state lines (Id. at p.1302) – again, no such evidence exists here.

3       Here, CSRs pick up waste from customers in California, a portion of which then may be

4   transported, in turn, after accumulation and processing, to Texas. CSRs are not drivers in the "final

5   leg" of transporting anything and thus plainly do not meet the Ninth Circuit's test under *Klitzke*.

6   Nor do CSRs cross state lines. Moreover, the "practical continuity of interstate commerce" can be

7   broken by processing of the product. *Kimball v. Goodyear Tire and Rubber Co.*, 504 F.Supp 544

8   (E.D.Tex 1980) held there was an interruption in the "practical continuity" when a product clearly

9   came to rest instate and was refined and changed by chemical processing.

10      Obviously, all of these questions concerning the application of the interstate commerce

11  exemption in this case would focus squarely on Safety-Kleen's business activities, not on any

12  particular class member, and can be decided on a classwide basis.[5]

13      Safety-Kleen also cites to *Dauphin v. Chestnut Ridge Trans.*, 2009 U.S. Dist. LEXIS 74483

14  (S.D.N.Y. 2009) for the same proposition as *Bishop* (determination of federal exemption requires

15  individual analysis). However, in *Dauphin*, just like *Bishop*, class members crossed state lines on a

16  regular basis. Id. at *12-*13. Again, there is no evidence here, and Safety-Kleen offers none, that

17  any class member ever crossed state lines. There is no need to determine on a class member by

18  class member basis who crossed state lines, and the question whether Safety-Kleen shipped waste

19  "in the stream of interstate commerce" can plainly be decided on a classwide basis. If Safety-

20  Kleen meets the federal exemption, all of its CSRs are obviously exempt from premium pay, but

21  not regular pay for each hour worked.

22

23

---

24  [5] Safety-Kleen's reliance on *Bishop* is further undermined by the fact that, in Bishop, plaintiff was
25  unable to show that any other class member worked overtime (p.1296) – a fact Safety-Kleen
    concedes in this case. The plaintiff in *Bishop* was a "dedicated" driver for one of defendant's
26  clients (Chevron) and there was no evidence that any other member of the class was likewise a
    dedicated driver. Id. at p.1296). Moreover, unlike Safety-Kleen, the defendant in *Bishop*
27  specifically held itself out as an "interstate trucker" (Id. at p.1292) and delivered products to
    customers in California.
28

1   **IV. THE QUANTUM OF DAMAGES IS A SIMPLE FUNCTION OF HOW MANY HOURS**

2   **CSRs WORKED**

3        Safety-Kleen argues that, since it failed to maintain accurate time records, it is impossible

4   to quantify damages for the class or any particular CSR.  Safety-Kleen is wrong.

5        There are two theories presented in this case.  The first, which seeks payment for every

6   hour worked because CSRs were hourly employees, requires the mechanical application of the

7   hourly rate of pay to the number of hours of unpaid overtime.  The second, which seeks a premium

8   rate of pay for every hour worked on those days where CSRs were not otherwise exempt from a

9   premium rate of pay, again requires the mechanical application of the premium rate of pay to the

10  number of hours of unpaid overtime.

11       Safety-Kleen claims that variations in the amount of overtime due each class member

12  should defeat certification.  Safety-Kleen is wrong.  "[D]ifferences in the total unpaid overtime

13  compensation owed each class member" is <u>not</u> a defense to class certification.  *Sav-On Drug*

14  *Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 335 (2004).

15                            In cases where the fact of injury and damage breaks down in what
                              may be characterized as 'virtually a mechanical task' 'capable of

16                            mathematical or formula calculation,' 'the existence of
                              individualized claims seems to offer no barrier to certification on

17                            grounds of manageability.'

18  *Windham v. American Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977).

19       Safety-Kleen also argues that since it did not keep time records, as it was legally required

20  to, a determination of the amount of overtime due will be difficult and cumbersome.  Safety-Kleen

21  is wrong again.

22       To determine how many hours of overtime were worked by employees when an employer

23  violates the law and fails to maintain records, estimates can be used.  All that is required is

24  evidence sufficient to permit a "just and reasonable inference" regarding the extent of the overtime

25  work.  *Anderson v. Mt. Clemens Pottery Co.* (1946) 328 US 680, 687.  The United States Supreme

26  Court decided in *Anderson* that in cases such as the present one, where the employer has failed to

27  keep records required by statute, the consequences for such failure should fall on the employer, not

28

the employee. In such a situation, imprecise evidence by the employee can provide a sufficient

basis for damages. 328 U.S. 687; *Reeves v. International Tel. and Tel. Corp.* (9th Cir. 1980) 616

F.2d 1342, 1351.

> Although the employee has the burden of proving that he performed
> work for which he was not compensated, public policy prohibits
> making that burden an impossible hurdle for the employee.
> [Citation.] `[W]here the employer's records are inaccurate or
> inadequate and the employee cannot offer convincing substitutes a . .
> . difficult problem arises. The solution, however, is not to penalize
> the employee by denying him any recovery on the ground that he is
> unable to prove the precise extent of uncompensated work. Such a
> result would place a premium on an employer's failure to keep proper
> records in conformity with his statutory duty; it would allow the
> employer to keep the benefits of an employee's labors without paying
> due compensation. . . .

> *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, 727.

Statistical evidence is commonly accepted by courts for calculating damages in class

actions, including wage and hour litigation. *Sullivan v. Kelly Services, Inc.* (N.D.Cal. 4-27-

2010)[rejecting defendant's reliance on *Wells Fargo, supra,* to defeat predominance where plaintiff

submitted a viable plan for managing a misclassification class action using statistical evidence and

representative testimony], citing *Alvarez v. IBP, Inc.,* 339 F.3d 894, 901, 914-15 (9th Cir. 2003); *In

re Estate of Marcos Human Rights Litig.,* 910 F. Supp. 1460, 1464-65, 1469 (D. Haw. 1995); *Bell

v. Farmers Ins. Exchange,* 115 Cal. App. 4th 715, 747-755 (2004).

Since Safety-Kleen violated the law and failed to maintain time records for CSRs, plaintiff

has turned to a statistician, Dr. Jim Lackritz, to estimate the hours worked. To do so, Dr. Lackritz

examined 43 declarations of CSRs, all of which were submitted by Safety-Kleen in this litigation.

Decl. Lackritz at para. 4. Of the total of 304 class members, these 43 declarations enabled Dr.

Lackritz to predict with 95% confidence that the estimated mean shift length was 10.33 hours and

is accurate to within + 0.22 hours, or approximately + 12.92 minutes. Id. at para. 6. Dr. Lackritz

was also provided 12 *additional* manager declarations, also submitted by Safety-Kleen, which

confirmed his estimated mean shift length. Id. at paras. 7, 8.

The only question remaining will be whether the overtime hours worked should be paid at

1    the regular hourly rate of pay for CSRs, or at the higher premium rate on those days CSRs do not

2    fall under the driver exemption.

3    **V. PLAINTIFF'S SUMMARY TRIAL PLAN**

4         Whether Safety-Kleen was paying Wamboldt and the class as hourly employees (as the

5    Labor Commissioner already concluded and as plaintiff alleged in his FAC) under the DOL's and

6    Ninth Circuit's test can, and should be, decided on a motion for summary adjudication before trial.

7    If plaintiff prevails, as he expects he will, the class will then be owed an hourly rate for every hour

8    worked – regardless of who carried what, when, and in what truck.  Thus, the trial on that claim

9    will be reduced to the presentation of statistical evidence of average hours worked, as discussed

10    above, and the computation of damages therefrom.

11         With regard to the hazmat driver exemption, plaintiff intends to call Wamboldt to establish

12    that CSRs did not carry hazmat everyday, that CSRs were not the "final leg" in the destination of

13    anything they collected, that CSRs did not drive across state lines, that the waste collected

14    statewide was held by Safety-Kleen at accumulation centers, and that CSRs did not drive vehicles

15    subject to any exemption on many days of their employment.  The burden will then shift to Safety-

16    Kleen to produce summary evidence of which days it has its legally required records to prove that

17    CSRs met one or more of the exemptions relied upon by Safety-Kleen.  Since plaintiff will

18    stipulate to the accuracy of Safety-Kleen's hazmat and truck records for all class members (that it

19    correctly claims it is legally required to maintain), the records alone, presented in summary form,

20    will be sufficient for Safety-Kleen to establish the exemption for those days such records exist.  For

21    those days it has no such evidence, plaintiff and the class are entitled to premium pay for the

22    overtime hours worked.

23    **VI. CONCLUSION**

24         Safety-Kleen's Motion to Decertify fails to address plaintiff's core claim that he and the

25    class were hourly employees but were not paid for every hour worked.  That claim has nothing to

26    do with which CSR carried what, where, when, and in which truck.  Hourly employees must be

27    paid for every hour worked.  The Motion also fails to cite the recent *Lincare* case which deals with

28

1   an employer's burden of proof in a case involving hazmat drivers.   Plaintiff's willingness to

2   stipulate to the accuracy of Safety-Kleen's records reduces this case to one of essentially stipulated

3   facts: on those days Safety-Kleen has documentary evidence of the existence of the driver

4   exemption, CSRs were exempt from premium pay - but still must be paid their regular hourly rate

5   of pay for every hour worked.  Safety-Kleen's Motion should be denied and a trial date set.

6

7   Dated: June 8, 2010                                         CLARK & MARHKAM LLP

8

9                                                              /s/ David R. Markham
                                                              David R. Markham
10                                                             CLARK & MARKHAM LLP

11                                                             EDGAR LAW FIRM

12                                                             LAW OFFICES OF
                                                              BARRON E. RAMOS
13

14                                                             Attorneys for the class

15

16

17

18

19

20

21

22

23

24

25

26

27

28