| | |
|---|---|
| 1 | SEYFARTH SHAW LLP |
| | Robert W. Tollen (SBN 038875) |
| 2 | Kevin J. Lesinski (SBN 110862) |
| | Sarah K. Hamilton (SBN 238819) |
| 3 | 560 Mission Street, Suite 3100 |
| | San Francisco, California 94105 |
| 4 | Telephone: (415) 397-2823 |
| | Facsimile: (415) 397-8549 |
| 5 | |
| | Attorneys for Defendant |
| 6 | SAFETY-KLEEN SYSTEMS, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN WAMBOLDT, on behalf of himself, those similarly situated and on behalf of the general public,

        Plaintiff,

    v.

SAFETY-KLEEN SYSTEMS, INC., a Wisconsin corporation, and DOES 1 through 100, inclusive,

        Defendant.

Case No. CV 4:07 00884 PJH

**DEFENDANT SAFETY-KLEEN'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DECERTIFY THE CLASS**

Date: July 7, 2010
Time: 9:00 AM
Judge: Hon. Phyllis J. Hamilton

# **TABLE OF CONTENTS**

A. INTRODUCTION ..........................................................................................................1

B. ARGUMENT .................................................................................................................3

    1. PLAINTIFF FAILS TO SATISFY THE RULE 23 REQUIREMENTS BECAUSE INDIVIDUAL ISSUES WILL PREDOMINATE OVER COMMON ISSUES IN LITIGATING THE MOTOR CARRIER EXEMPTION ........................................................................................................3

        a. Plaintiff Cannot Satisfy the Requirements of Fed. R. Civ. P. 23(b)(3) Through Summary Information or Stipulations ............................4

        b. The Class Certification Issues Raised by the Movement-in-Interstate Commerce Exemption Are Not Resolved By Plaintiff's Mistake of Law ..................................................................6

    2. PLAINTIFF'S NEW STRAIGHT TIME CLAIM DOES NOT SUPPORT CLASS CERTIFICATION .................................................................8

        a. Individualized Issues Would Predominate In Litigating Plaintiff's New Claim For Straight-Time Pay For Overtime Hours Worked ..................................................................................................8

        b. Plaintiff's Straight Time Claim May Not Be Maintained On A Class Action Basis .....................................................................................12

C. CONCLUSION ............................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Amchem Products Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................ 6

*Baez v. Wells Fargo Armored Serv. Corp.*,
    938 F.2d 180 (11th Cir. 1991) ................................................................................ 7

*In Re Nassau County Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006) .................................................................................... 6

*In Re Wells Fargo Home Mortg. Overtime Pay Litig.*,
    2010 U.S. Dist. LEXIS 3132 (N.D. Cal. Jan. 12, 2010) .................................... 4, 5

*In Re Wells Fargo Home Mortg. Overtime Pay Litig.*,
    571 F.3d 953 (9th Cir. 2009) ............................................................................. 5, 6

*Marlo v. UPS Inc.*,
    2008 U.S. Dist. LEXIS 4881 (C.D. Cal. May 19, 2008) ........................................ 5

*Seijas v. Republic of Arg.*,
    2010 U.S. App. LEXIS 10807 (2d Cir., May 27, 2010) ......................................... 6

*Thomas v. Wichita Coca-Cola Bottling Co.*,
    968 F.2d 1022 (10th Cir. 1992) .............................................................................. 7

*Vinole v. Countrywide Home Loans, Inc.*
    571 F.3d 935 (9th Cir. 2009) ............................................................................. 5, 6

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ................................................................................ 4

**STATE STATUTES**

CAL. LAB. CODE § 204 ................................................................................................ 9, 10

CAL. LAB. CODE § 226 ................................................................................................ 9, 10

CAL. LAB. CODE § 510 ..................................................................................................... 12

**RULES**

Fed. R. Civ. P. 23 ........................................................................................ 1, 2, 3, 4, 6, 13

**REGULATIONS**

29 C.F.R. § 782.7(b)(1) (2010) ......................................................................................... 6

1 Defendant Safety-Kleen Systems, Inc. hereby submits its Reply Memorandum in further support
2 of its Motion to Decertify the Class.

### A. INTRODUCTION

At the April 22, 2010, Case Management Conference, Safety-Kleen's counsel outlined the grounds for Safety-Kleen's Motion to Decertify the Class, filed two days earlier. In summary, the Motion provides that the Court should decertify the class, pursuant to Fed. R. Civ. P. 23(b)(3) and 23(c)(1)(C), because Plaintiff cannot meet his burden of demonstrating that common issues will predominate over individual issues. To the contrary, individualized issues will predominate and will overwhelm the litigation.

More specifically, Safety-Kleen's defenses, based upon separate grounds for applying the motor carrier safety exemption (*i.e.*, the transport of hazardous material and the transport of material that is in an interstate movement) will require an analysis of each load that each Customer Service Representative ("CSR") picked up from or delivered to each customer, on each working day, in order to determine whether it was a hazardous material and/or was at the beginning of a movement in interstate commerce. A third, separate ground for applying the motor carrier exemption (driving a truck with a gross vehicle weight rating ["GVWR"] of 26,001 or more pounds) will require analysis of the GVWR of each truck driven by each CSR each day. As well, it will be necessary to determine, for each day that each CSR worked, whether that CSR worked in excess of 8 hours that day or in excess of 40 hours that week. The latter issue, like the former, goes to liability, not to damages: unless an employee works in excess of 8 hours per day or 40 hours per week, there is no violation. As a result, individualized issues will heavily predominate over common issues, not the reverse. Therefore, under well-established Ninth Circuit law, this litigation cannot proceed as a class action.

At the Case Management Conference, the Court expressed the tentative view that it appears individual issues will predominate, thereby putting Plaintiff on notice that either his Opposition would have to demonstrate how common issues would predominate, or he would face decertification. Plaintiff's Opposition provides no such showing. Despite a heading on page 11 entitled "Predominance Exists," nowhere in Plaintiff's Opposition is it even argued that

common issues will predominate. Plaintiff fails even to identify any common proof that would allow a jury to determine common issues on a class-wide basis. Instead, Plaintiff suggests that evidence of the contents of each load picked up each day from each customer by each CSR, and the "size" of truck operated by each CSR on each day, can somehow be presented through the use of summary exhibits and stipulated facts. *Id.*

Plaintiff in effect concedes that the resolution of the litigation can only be accomplished by examining each load picked up, and each vehicle driven, by each CSR on each workday, but he seems to suggest that the evidence can somehow be truncated, summarized or stipulated to. Plaintiff has failed to show how that can be done. Moreover, nothing in Rule 23 or in the case law supports Plaintiff's position. On the contrary, even if the individual issues could be summarized or stipulated to in some way, the case law is clear that they remain individual issues for purposes of predominance analysis under Rule 23.

Plaintiff's vague proposal to have the vast and varied evidence of each CSR's daily records and logs summarized or stipulated to does not change the individual nature of such evidence. It would also be unworkable. As set forth in Safety-Kleen's opening Memorandum at p. 9, the individual records and logs for 146,185 separate workdays would need to be examined and analyzed. Even if the process were somehow streamlined to the point of spending only ten minutes dealing with each of those days, it still would take 24,346 hours, or about twelve years, to complete. The individual issues in this litigation overwhelm any issues common to the class, and the class should therefore be decertified.

In an additional attempt to avoid class decertification, Plaintiff has concluded, for the first time, that his "core claim" is not for overtime pay. Rather, Plaintiff now tells us that his "core claim" is for straight-time pay for overtime hours worked. That's gibberish. There is no legal basis for this claim, other than the statutory and regulatory provisions on overtime, and they are subject to the motor carrier exemption. Therefore, this new-found argument does not change the fact that individual issues will predominate. Further, this "core claim" was not pleaded in the operative complaint, and Plaintiff's motion to certify the class did not present it as a basis for

2

Defendant's Reply Memorandum ISO Mtn. To Decertify Class.   Case No. CV 07-00884 PJH

certification. Accordingly, Plaintiff's so-called straight time claim for overtime hours worked may not be maintained on a class action basis.

For these reasons, and the reasons set forth in Defendant's Motion to Decertify the Class, an order should be entered decertifying the class.

**B.     ARGUMENT**

**1.    PLAINTIFF FAILS TO SATISFY THE RULE 23 REQUIREMENTS BECAUSE INDIVIDUAL ISSUES WILL PREDOMINATE OVER COMMON ISSUES IN LITIGATING THE MOTOR CARRIER EXEMPTION**

Plaintiff's Opposition is noteworthy for its failure to argue that common issues predominate. Nor does Plaintiff come forward with any common proof that would support a class-wide judgment. Plaintiff concedes that the question of whether each CSR was subject, on any given day, to the motor carrier exemption from overtime can be answered only by examining the records and documentation relating to each separate day worked by each CSR during the purported class period. *See* Opp. at 3:21-22, 14:8-9. It is undisputed that, on each work day, each CSR normally picks up numerous loads from varying customers and that each separate pick-up must be analyzed to determine (a) whether it is a hazardous material and/or (b) whether its pick up is the beginning of a movement in interstate commerce. As well, each day a CSR works, it is necessary to determine whether the truck driven by that CSR that day has a GVWR that equals or exceeds 26,001 pounds, such that the employee is exempt from overtime. Even if defendant's enormously voluminous records could be summarized in a table of some sort, it would still reflect the activities of each individual CSR, each day of his or her work, the nature of each load picked up from a customer on each such day, and the GVWR of each truck driven by each CSR each day  The individualized nature of the analysis would not change.

As set forth in Safety-Kleen's opening Memorandum at p. 19, the individualized records and logs of approximately 146,185 separate work days will need to be examined and analyzed in order to determine if any one of the three different grounds for the motor carrier safety exemption applied on any particular day. Safety-Kleen believes, based upon its partial review, that every CSR was subject to at least one of the three grounds for exemption on virtually each

3

1  day he or she worked. But the analysis is individualized and must be done on a pick-up by pick-
2  up, day by day, CSR by CSR basis. Plaintiff's Opposition concedes as much, but attempts to
3  forestall decertification by arguing: (a) that the individualized evidence can be presented in
4  summary fashion and/or by stipulation; and (b) as to the interstate commerce exemption it does
5  not apply to the in-state movement of goods with out-of-state final destinations. These
6  arguments are erroneous, and neither is sufficient to prevent decertification.

      a. **Plaintiff Cannot Satisfy the Requirements of Fed. R. Civ. P. 23(b)(3) Through Summary Information or Stipulations**

In order to maintain a class certification, Plaintiff must show that common issues predominate. Here they do not. Plaintiff argues that two of the bases for the motor carrier exemption, (1) that CSRs carried hazardous materials and (2) that they drove a truck with a particular gross vehicle weight rating, can be proven through summary exhibits and stipulated facts. This proffer fails to address the key issue raised in Safety-Kleen's Motion-- that individual issues predominate.

First, there is no "summary evidence" to present, because, as shown in the Motion, each CSR carried many different materials each day. Similarly, CSRs each drove different vehicles which changed from time to time. Accordingly, whether the exemption applies to any individual on any given day must be looked at on an individual basis.[1] While Safety-Kleen maintains records which support its position on the application of the exemptions as to individuals in the class, presenting them will still require an analysis as to what each CSR did each workday, including an analysis of the nature of each load picked up by that CSR each day, as well as the vehicle driven by the CSR. Not all CSRs will necessarily be exempt under all bases of the motor carrier exemption on every day. On a given day, some CSRs may be exempt for one reason,

---

[1] Safety-Kleen does not dispute that it bears the burden of proving an exemption. This burden has no bearing on whether the matter is appropriate for class certification. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) ("If the main issues in a case require the separate adjudication of each class member's individual claim or ***defense***, a Rule 23(b)(3) action would be inappropriate") (emphasis added); *In Re Wells Fargo Home Mortg. Overtime Pay Litig.*, 2010 U.S. Dist. LEXIS 3132, at *26 (N.D. Cal. Jan. 12, 2010) (rejecting Plaintiff's argument "that because defendant, at trial, has the burden of proving that class members qualified for one of the asserted exemptions, plaintiff is somehow freed from meeting the predominance requirement with respect to those defenses.") ("*Wells Fargo II*").

4

Defendant's Reply Memorandum ISO Mtn. To Decertify Class. Case No. CV 07-00884 PJH

others for another reason, and perhaps (although less likely) some might not be exempt at all. Plaintiff has failed to identify any possible common proof regarding application of the motor carrier exemption.  *See e.g. Marlo v. UPS Inc.*, 2008 U.S. Dist. LEXIS 4881, at *22-23 (C.D. Cal. May 19, 2008) (decertifying class where plaintiff failed to identify common proof that would allowed a jury to determine common issues on a class-wide basis). The application of the exemption to class members cannot, as Plaintiff claims, be merely "summarized" as to the class. The data can be presented at trial in the form of original documents, or it can be presented in the form of summaries.  In either case, the inquiry is still an individual one as to the nature of each load picked up by each CSR each day and the GVWR of the vehicle he or she drove that day. There is *no* form of evidence that can answer those questions for the CSRs as a group.

Like the Plaintiff here, the plaintiff in *Wells Fargo II*, 2010 U.S. Dist. LEXIS 3132 at *16-18, made several suggestions for avoiding an individualized inquiry into whether each employee was subject to the exemption asserted as a defense by their employer.  For example, the plaintiff suggested that the court could use random sampling of class members to determine whether the class, as a whole, qualified for any of the asserted exemptions.  *Id.* at *23.  The Court rejected plaintiff's suggestions because they would have resulted in certification of an overbroad class that included both injured and uninjured parties.  *Id.* at *24 (Court noted that plaintiff did not identify "a single case in which a court certified an overbroad class that included both injured and uninjured parties.").  In addition, as the District Court in *Wells Fargo II* noted on remand, the Ninth Circuit's decisions in *In Re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009) ("*Wells Fargo I*"), and *Vinole v. Countrywide Home Loans, Inc.* 571 F.3d 935, 947 (9th Cir. 2009), left the court with little discretion, and taken together, they "foreclose any viable path for certifying" a class action where, as here, the resolution of an exemption asserted by the employer as a defense depends upon how each employee spends his or her time at work.  *Wells Fargo II*, 2010 U.S. Dist. LEXIS 3132 at *16-21.  Indeed, the type of individualized analysis required in this case is precisely what the Ninth Circuit in *Wells Fargo I* and *Vinole* determined was not appropriate in the class context. *See Wells Fargo II*, 2010 U.S. Dist. LEXIS 3132, at *20-21 (discussing *Wells Fargo I* and *Vinole*).  The issue is further

compounded here because, unlike the misclassification cases cited in Safety-Kleen's opening Memorandum, the Court has ruled that the motor carrier exemption **must be applied on a day-by-day basis**. Such an inquiry is necessarily individualized and is not appropriate for class treatment under recent Ninth Circuit's authority.

In addition to summary exhibits, Plaintiff proposes that the parties can stipulate as to any day that the records support that a CSR is exempt. Opp. at 11. This too fails to address the fact that individual issues predominate. Parties may not just stipulate away the requirements of Rule 23. *See*, *e.g.*, *In Re Nassau County Strip Search Cases*, 461 F.3d 219, 227-28 (2d Cir. 2006) (defendants' concession of liability common to class did not eliminate that issue from the predominance analysis); *accord*, *Seijas v. Republic of Arg.*, 2010 U.S. App. LEXIS 10807, at *8-9 (2d Cir., May 27, 2010). In that case, the court rejected defendants' attempt to concede to issues in order to avoid the Court's considering them in its predominance analysis. The court noted that the fact "[t]hat the class-wide proof comes in the form of a simple concession rather than contested evidence certainly shortens the time that the court must spend adjudicating the issue, *but it does nothing to alter the fundamental cohesion of the proposed class, which is the central concern of the predominance requirement.*" *Id.* at 227-28 (emphasis added) ("[T]he fact that an issue is conceded or otherwise resolved does not mean that it ceases to be an "issue" for the purposes of predominance analysis."). *See also Amchem Products Inc. v. Windsor*, 521 U.S. 591, 622-23 (1997) (rejecting stipulation of class certification for settlement where underlying predominance requirements of Rule 23(b)(3) were not met).

      b.    **The Class Certification Issues Raised by the Movement-in-Interstate Commerce Exemption Are Not Resolved By Plaintiff's Mistake of Law**

Plaintiff's argument regarding application of the movement-in-interstate commerce grounds for the exemption is based on his mistaken legal contention that the motor carrier safety exemption does not apply where goods are moving out of state, but the driver in question handles only the in-state portion of the interstate movement. Plaintiff cites no authority and is wrong. *See* 29 C.F.R. § 782.7(b)(1) (2010) (emphasis added):

6

Defendant's Reply Memorandum ISO Mtn. To Decertify Class.  Case No. CV 07-00884 PJH

> The result is no different where the vehicles do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate commerce …; the fact that other carriers transport it *out of or into* the State is not material.

*See also Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 182 (11th Cir. 1991) (drivers of armored trucks engaged only in intrastate transport were exempt because items transported were bound for out of state banks); *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1026 (10th Cir. 1992) (motor carrier exemption applied to intrastate transport of empty bottles that had out of state final destinations). *See also* FLSA WH Opinion Letter 2006-3 (transport of pallets and kegs intrastate prior to shipment out-of-state constitutes interstate commerce, such that drivers of pallets and kegs are exempt under motor carrier exemption).

Plaintiff states that the "practical continuity of interstate commerce" can be broken by processing of the product." (Opp. at 15:7-7). Plaintiff provides no explanation of what "processing of the product" means and no evidence to show that loads picked up by CSRs are "processed" in such a manner as to break their movement in interstate commerce. To the contrary, Safety-Kleen presented evidence in support of its Motion that the products transported by CSRs are not changed prior to crossing state lines. *See* Docket No. 143, Declaration of Bill Ross In Support of Motion to Decertify the Class, ¶ 23-24 (providing that "except for parts washing waste (which is not, in any event, shipped out of California), the contents of the drums and other containers are not mixed together" prior to transport to out of state destinations). That evidence is undisputed.

Notably, unlike the other two grounds for the motor carries exemption discussed above, Plaintiff does not offer to stipulate to the movement-in-interstate commerce basis for applying the exemption. Nonetheless, it too entails an individualized inquiry. Specifically, this basis for the exemption requires analyzing whether each load picked up from each customer was beginning a movement that would carry it out-of-state. Each CSR was responsible for picking up different materials from different customers, each and every day. Whether the specific load was destined for out-of-state transport would need to be analyzed individually. Analyzing the

7

Defendant's Reply Memorandum ISO Mtn. To Decertify Class.  Case No. CV 07-00884 PJH

application of the movement-in-interstate commerce exemption is inherently individualized, Plaintiff cannot merely obtain summaries or stipulations to avoid decertification.

Having failed to identify any common proof that would allow a jury to determine common issues on a class-wide basis, and having failed to otherwise demonstrate that common issues predominate over individual issues, Plaintiff has failed to provide any basis for allowing this litigation to proceed as a class action. Accordingly, Safety-Kleen's Motion to Decertify should be granted.

### 2. PLAINTIFF'S NEW STRAIGHT TIME CLAIM DOES NOT SUPPORT CLASS CERTIFICATION

Plaintiff's primary attack on Safety-Kleen's Motion to Decertify involves a contention that CSRs were hourly employees who, regardless of the IWC's premium pay requirements, were entitled to additional straight-time pay for overtime hours worked. There is no statutory basis for such a claim. Moreover, to the extent the class *is* entitled to additional straight-time pay for overtime hours worked, that claim is subject to the same exemption as the claim for premium pay. It is, therefore, also subject to the same objection that resolving the exemption will cause individual issues to overwhelm common issues. Further, contrary to Plaintiff's current contention that this is his "core claim," (Opp. at p. 2:9), it is not expressly stated in his First Amended Complaint ("FAC") and was not the basis for his Motion to Certify the Class.

#### a. Individualized Issues Would Predominate In Litigating Plaintiff's New Claim For Straight-Time Pay For Overtime Hours Worked

The center stage and the bulk of Plaintiff's Opposition is taken up with arguing that Safety-Kleen's CSRs were "hourly" employees. Safety-Kleen does not concede that its arrangement with its CSRs provided for payment by the hour. Regardless, the Opposition fails to show what legal consequences should properly follow from Plaintiff's argument.

At the Case Management Conference on April 22, 2010, the Court asked counsel for Plaintiff, Mr. Markham, to explain the legal basis for Plaintiff's newly announced straight-time claim. Mr. Markham failed to offer anything. The Court then asked counsel for Safety-Kleen whether he understood the legal basis for the claim, and he stated he did not.

The Opposition's "Introduction and Summary of Argument," (Opp. at 2:1, 4), refers to Labor Code sections 204(a) and (b) and 226(a) and (b).  Significantly, no further reference is made to those provisions in the Opposition, including Part II, where Plaintiff, presumably, presents his full argument that CSRs "were required to be paid for every hour worked, whether at a premium rate or at regular hourly rates."  Opp. at 5:1-2.

Labor Code section 204 regulates the *timing* of wage payments.  It does not regulate the *amount* of money that must be paid:

> (a) All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment ***are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays***.  Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month.  However, salaries of executive, administrative, and professional employees of employers covered by the Fair Labor Standards Act, as set forth pursuant to Section 13(a)(1) of the Fair Labor Standards Act, as amended through March 1, 1969, in Part 541 of Title 20 of the Code of Federal Regulations, as that part now reads or may be amended to read at any time hereafter, may be paid once a month on or before the 26th day of the month during which the labor was performed if the entire month's salaries, including the unearned portion between the date of payment and the last day of the month, are paid at that time.
>
> (b)(1) Notwithstanding any other provision of this section, all wages earned for labor in excess of the normal work period ***shall be paid no later than the payday for the next regular payroll period***.
>
> (2) An employer is in compliance with the requirements of subdivision (a) of Section 226 relating to total hours worked by the employee, if hours worked in excess of the normal work period during the current pay period are itemized as corrections on the paystub for the next regular pay period. Any corrections set out in a subsequently issued paystub shall state the inclusive dates for the pay period for which the employer is correcting its initial report of hours worked.

CAL. LAB. CODE § 204(a)-(b) (West 2010) (emphasis added).  Nowhere in Labor Code section 204 is there any requirement that employers must pay employees at a straight-time rate for overtime hours worked.

Labor Code section 226 requires that an itemized wage statement must accompany each wage payment, and it specifies the information that must be on it.  It further requires that

9

1 employees must be able to inspect the employer's records pertaining to that information. Labor Code 226 does not regulate the *amount* of money that must be paid:

> (a) Every employer shall, semimonthly or at the time of each payment of wages, ***furnish each of his or her employees,*** either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, ***an accurate itemized statement in writing showing*** (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piecerate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number except that January 1, 2008, only the last four digits of his or her social security number of an employee identification or other than social security number may e shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and ***a copy of the statement or record of the deductions shall be kept on file by the employer*** for at least three years at the place of employment or at a central location within the State of California.
>
> (b) An employer that is required by this code or any regulation adopted pursuant to this code to keep the information required by subdivision (a) ***shall afford current and former employees the right to inspect or copy the records pertaining to that current or former employee,*** upon reasonable request to the employer. The employer may take reasonable steps to assure the identity of a current or former employee. If the employer provides copies of the records, the actual cost of reproduction may be charged to the current or former employee.

CAL. LAB. CODE § 226(a)-(b) (West 2010) (emphasis added). Nowhere in Labor Code section 226 is there any requirement that employers must pay employees at a straight-time rate for overtime hours worked.

In the detailed part of his Opposition, Part II at pp. 5-11 (the heading for which reads: "CSRs Were Required To Be Paid For Every Hour Worked, Whether At A Premium Rate Or At Regular Hourly Rates," p. 5:1-2), Plaintiff makes no reference to Labor Code sections 204 or 226. Instead, Plaintiff there argues (Opp. at p. 10:2-3, emphasis added) that the "***wage orders*** are

10

Defendant's Reply Memorandum ISO Mtn. To Decertify Class. Case No. CV 07-00884 PJH

to be construed in accordance with the ordinary principles of statutory construction." But what provision of the Wage Order does Plaintiff refer to? Plaintiff does not say. Plaintiff does not cite any provision of the Wage Order.

Nothing in Plaintiff's argument explains the legal basis for Plaintiff's claim that CSRs are entitled to additional straight-time pay for overtime hours worked. The reason is that the answer totally defeats Plaintiff's opposition to decertification.

Section 3(A) is the provision in the Wage Order that requires payment of straight-time pay *and* premium pay for overtime hours worked (emphasis added):

> (1) The following overtime provisions are applicable to employees [who are not minors]. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives ***one and one-half (1 1/2) times*** such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than: (a) ***One and one-half (1 ½) times*** the employee's regular rate of pay for all hours worked in excess of eight (8) hours….

Section 3(A) requires the payment of "one" (straight-time pay) and "one-half" (premium pay) times the regular rate for all overtime hours worked. Section 3, however, is subject to the various exemptions and exceptions set forth in later portions of the section, including the motor carrier exemption, section 3(K) (emphasis added): "***The provisions of this section*** are not applicable to employees whose hours of service are regulated by [California or federal motor carrier safety regulations]."

Thus, Plaintiff's right to receive *straight-time pay for overtime hours worked* is regulated by the same section 3 that regulates Plaintiff's right to receive *premium pay for overtime hours worked*. As such, it is subject to the motor carrier exemption, subsection (K) of section 3. In any litigation regarding application of the motor carrier exemption to Safety-Kleen's CSRs, individualized issues will overwhelm common issues. For that reason, this case cannot be maintained as a class action.

### b. Plaintiff's Straight Time Claim May Not Be Maintained On A Class Action Basis

Plaintiff's claim for straight time pay for overtime hours worked was not expressly provided for in the First Amended Complaint and was not referred to in Plaintiff's Motion to Certify the Class. It may not be maintained on a class action basis.

At the case management conference on April 22, 2010, the Court asked counsel for plaintiff, Mr. Markham, where, in the First Amended Complaint, Plaintiff's new straight-time claim was located. He referred to paragraphs 10 and 11. Judge Hamilton commented that she did not see the claim in those paragraphs. It is not there. To the contrary, paragraph 11 explicitly recites that Plaintiff's claim is for payment of "an overtime premium":

> 10. WAMBOLDT was paid as an hourly employee whereby his pay-stubs would reflect his regular hours worked, though it did not reflect any overtime hours worked. WAMBOLDT was never paid overtime compensation, though he was required to regularly work in excess of ten (10) hours per day. WAMBOLDT was also paid commissions on sales volume. WAMBOLDT's commissions, though fully earned by WAMBOLDT, were oftentimes reduced by the overall profitability of the branch in which he worked.
>
> 11. Under California Labor Code section 510 SAFETY-KLEEN was obligated to compensate its hourly employees such as WAMBOLDT and other members of the class at an overtime premium for all hours worked in excess of eight (8) hours in one day and/or in excess of forty (40) hours in a work week. Overtime compensation must be paid at a rate not less than one and one-half times the regular rate of pay. SAFETY-KLEEN failed to pay WAMBOLDT and members of the class overtime compensation as required by California law.

Docket No. 30, First Amended Complaint, pgs. 3-4 (emphasis added).

In addition, nowhere in Plaintiff's Motion for Class Certification, Docket no. 39, did Plaintiff refer to this so-called straight-time claim. Instead, in his class certification motion, Plaintiff argued that –

> Under California Labor Code section 510 and Wage Order 7-2001 Safety-Kleen was obligated to compensate its hourly employees, such as plaintiff Wamboldt and other members of the class, at ***an overtime premium*** for all hours worked in excess of eight (8) hours in one day and/or in excess of forty (40) hours in a work week.

*Id.*, at pgs. 5:21-6:3. Plaintiff sought certification of his claim for an overtime premium, not

12

Defendant's Reply Memorandum ISO Mtn. To Decertify Class. Case No. CV 07-00884 PJH

1 certification of a straight-time claim.

2 In addition, in his class certification motion, Plaintiff argued that the motor carrier
3 exemption did not apply to CSRs solely on the ground that CSRs are "not drivers." *Id*. at pgs.
4 6:10-7:2. Nowhere in this motion did Plaintiff contend that the exemption was inapplicable
5 because Plaintiff was seeking straight time pay.

6 Because Plaintiff's straight time claim was not provided for in his Complaint and was not
7 offered as a basis for certifying the class, it may not be maintained on a class action basis.

8 **C.    CONCLUSION**

9 The inescapable reality is that Plaintiff's claims are not susceptible to class treatment
10 because they are dependant on highly individualized factual inquires for each CSR.  Plaintiff has
11 failed to meet his burden of demonstrating that common issue predominate over individual issues
12 and, therefore, has failed to satisfy the requirements of Federal Rule of Civil Procedure 23(b)(3).
13 For the foregoing reasons, and for the reasons set forth in Defendant's Motion to Decertify the
14 Class, Defendant respectfully requests that this Court decertify the class.

15 DATED: June 23, 2010                     SEYFARTH SHAW LLP

17                                          By      /s/ Sarah K. Hamilton
                                                   Robert W. Tollen
                                                   Kevin J. Lesinski
18                                                 Sarah K. Hamilton
                                            Attorneys for Defendant
19                                          SAFETY-KLEEN SYSTEMS, INC.