UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN WAMBOLDT,

    Plaintiff,

    v.

SAFETY-KLEEN SYSTEMS, INC., et al.,

    Defendants.

No. C 07-0884 PJH

**ORDER GRANTING MOTION TO DECERTIFY CLASS**

Defendant's motion to decertify the class came on for hearing before this court on July 7, 2010. Plaintiff Steven Wamboldt ("Wamboldt"), on behalf of a certified plaintiff class (collectively "plaintiffs"), appeared through counsel David Markham, Jeremy Fietz, and Donald Edgar. Defendant Safety-Kleen Systems, Inc. ("Safety-Kleen" or "defendant") appeared through its counsel, Robert William Tollen, and Kevin Lesinski. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court GRANTS defendant's motion for decertification of the plaintiff class, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

This action arises from defendant's alleged failure to pay overtime wages. Plaintiff Wamboldt was formerly employed as a customer service representative ("CSR") for defendant Safety-Kleen, which is engaged in the business of providing industrial washing services, and industrial waste and oil recycling services, to various private companies and government entities. See First Amended Complaint ("Am. Compl.") ¶ 2. Wamboldt's duties as a CSR included customer sales, client collections, and various telephone responsibilities, as well as on-site servicing of equipment, transportation of hazardous

waste, and driving of company vehicles in order to perform customer service calls. See id. at ¶ 8.

On November 17, 2006, plaintiff filed the instant action on behalf of himself, and a putative class of similarly situated CSRs "who worked in excess of eight (8) hours in a day and/or forty (40) hours in a work week [] at any time from November 17, 2002 to the present," in Los Angeles Superior Court. Id. at ¶ 16. Defendant Safety-Kleen subsequently removed the case to the Central District, alleging federal question jurisdiction pursuant to the Class Action Fairness Act of 2005. The case was then transferred to this court, where a related case, Perez v. Safety Kleen Systems, Inc., C 05-5338 PJH, was already pending. An amended complaint was filed on May 7, 2007.

Generally, plaintiff alleges that Safety-Kleen unlawfully failed to pay overtime due its CSRs, as required by California Labor Code § 510 and other provisions. See Am. Compl. ¶¶ 10, 12, 27-28. Plaintiff's complaint also contains derivative claims alleging that defendant violated California Labor Code § 202, which requires an employer to pay all wages due within 72 hours of an employee's quitting; California Unfair Competition law, Cal. Bus. & Prof. Code §§ 17200 et seq., which prohibits unlawful withholding of wages; and the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), Labor Code §§ 2698 et seq., which authorizes civil penalties. Id. ¶¶ 13, 26, 30, 33-41.

In August 2007, the court heard Safety-Kleen's motion for summary judgment together with plaintiff's motion for class certification. In support of its motion for summary judgment, Safety-Kleen contended in part that California's overtime requirements were not applicable to Safety Kleen's CSRs, including Wamboldt, because the California motor carrier exemption applied.

On August 21, 2007, the court issued its order granting in part and denying in part Safety-Kleen's motion for summary judgment, and granting plaintiff's motion for class certification. With respect to class certification, the court certified a class pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. Proc.") 23(a) and (b)(3). With respect to the

summary judgment motion, the court denied summary judgment on the issue whether California's overtime requirements apply to Safety-Kleen, in view of a material dispute of fact regarding application of California's motor carrier exemption. Specifically, the court found that a material dispute of fact existed as to whether and to what extent plaintiff Wamboldt drove hazardous materials, a critical issue in determining whether the motor carrier exemption applies. In view of this dispute of fact, the court also found it unnecessary to resolve whether the California motor carrier exemption, which has not often been interpreted, should follow the analogous federal motor carrier exemption.

Subsequently, Safety-Kleen filed a motion for leave to seek reconsideration of the court's summary judgment order – specifically as to the finding of a disputed fact regarding the transport of hazardous waste. Safety-Kleen also requested leave to file another motion for summary judgment in order to assert a new legal ground – that the California overtime requirements are not applicable because Wamboldt is exempt under federal Department of Transportation ("DOT") regulations. On September 10, 2007, the court granted Safety-Kleen's motion for leave to file a motion for reconsideration as to a discrepancy highlighted by defendant regarding a distinction between plaintiff Wamboldt's participation in "parts washing" v. "industrial waste management" services while a CSR. The court also granted Safety-Kleen leave to file an additional summary judgment motion with respect to the application of the federal DOT regulations.

On March 17, 2008, the court denied both the motion for reconsideration, and defendant's more recent summary judgment motion. The court denied the motion for reconsideration as to the court's August 2007 summary judgment order, finding that a material dispute of fact continued to exist with respect to whether Wamboldt was involved in the transportation of hazardous waste, such that the California motor carrier exemption applies. The court also denied defendant's new summary judgment motion, on grounds that there was "too much ambiguity" in the evidentiary record for the court to determine whether Wamboldt's duties could be characterized as interstate in nature – such that the

federal motor carrier exemption applies.

Now, defendant moves to decertify the previously certified class, on grounds that the class no longer meets the requirements of Fed. R. Civ. Proc. 23(b)(3) because individual issues, and not common ones, predominate.

**DISCUSSION**

A.  Legal Standard

Even after an order certifying a class action is entered, the court remains free "to modify it in the light of subsequent developments in the litigation" – up to and including decertification.  See Fed. R. Civ. Proc. 23(c)(1)(C); see also Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982).  In considering a motion to decertify, the standard is the same as in a motion to certify – i.e., plaintiffs must prove that they meet the requirements of Federal Rule of Civil Procedure 23(a) and (b).  If a plaintiff can no longer meet one or more of those requirements, decertification is appropriate.

As is the case with a motion for class certification, the court does not make a preliminary inquiry into the merits of plaintiffs' claims in determining whether to certify a class.  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974).  It will, however, scrutinize plaintiffs' legal causes of action to determine whether they are suitable for resolution on a class wide basis.  See, e.g., Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).  Making such a determination "will sometimes require examining issues that overlap with the merits."  Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 581, 587 (9th Cir. 2010)(en banc)("the court must consider evidence relating to the merits if such evidence also goes to the requirements of Rule 23").  The court will consider matters beyond the pleadings, if necessary, in order to ascertain whether the asserted claims or defenses are susceptible of resolution on a class wide basis.  See id. at 589; see also McCarthy v. Kleindienst, 741 F.2d 1406, 1419 n.8 (D.C. Cir. 1984).

B.  Legal Analysis

Defendant's motion is limited to consideration of Fed. R. Civ. Proc 23(b)(3), and

4

specifically, to consideration of that subsection's 'predominance' requirement. This requirement demands that a plaintiff establish that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members."[1] Defendant contends that, having completed discovery, it is now clear that plaintiffs cannot continue to satisfy the requirement.

Defendant's arguments focus on California's "motor carrier exemption." The state's motor carrier exemption is contained in multiple Industrial Welfare Commission ("IWC") wage orders, two of which – Wage Orders 4 and 7 – have already been found to apply in this action. The motor carrier exemption provides that overtime pay requirements are not applicable to employees whose hours of service are regulated by (1) the United States Department of Transportation ("DOT") Code of Federal Regulations, title 49, sections 395.1 to 395.13, Hours of Service Drivers; or (2) Title 13 of the California Code of Regulations, section 1200, subchapter 6.5, section 1200 and following sections, regulating hours of drivers. See, e.g., IWC Order No. 4-2001, Ex. 4 to Def. Appendix of Cal. and Fed. Authority ("Order 4"), Section 3(K). In other words, the IWC's motor carrier exemption applies to employees whose hours of service are regulated by either (1) federal regulations regarding hours of service of drivers (i.e., the "federal motor carrier regulations"); or (2) California state regulations regarding the hours of drivers (i.e., the "California motor carrier regulations"). Defendant relies on the motor carrier exemption as its principal defense to liability for failure to pay overtime wages, arguing that its CSRs are governed by either or both sets of motor carrier regulations.

According to defendant, continued class treatment of the present action is no longer proper, because analysis of whether the motor carrier exemption applies will require an intensive individualized inquiry into the daily activities performed by each member of the plaintiff CSR class. Defendant notes that the court previously clarified that the exemption's

---

[1] Fed. R. Civ. P. 23(b)(3) also requires that plaintiffs demonstrate that a class action is superior to other methods available for adjudicating the controversy at issue. However, defendant does not move to decertify on this ground.

5

applicability must be determined on a daily, rather than weekly basis – i.e., for each day in which the exemption applies to plaintiffs, plaintiffs are not entitled to overtime, and they are entitled to overtime for each day in which the exemption does not apply. See Order Denying Mot. for Reconsider. and Mot. for Summ. Judg. ("Reconsideration/MSJ Order") at 13-14. Moreover, defendant also notes that applicability of the motor carrier exemption – whether based on California or federal motor carrier regulations – is dependent upon the activities of individual CSRs. Further still, defendant points to variations in each CSR's daily activities – which variations purportedly support different bases for ultimate application of the IWC's motor carrier exemption (e.g., California motor carrier regulations v. federal motor carrier regulations).

Thus, argues defendant, and based on the relevant evidence in this case, the following issues must ultimately be determined for each CSR plaintiff on a daily basis, in order to determine in turn whether the motor carrier exemption applies and whether liability exists: (1) whether each CSR drove hazardous materials (California motor carrier regulations); (2) whether each CSR transported material that was moving in interstate commerce (federal motor carrier regulations); (3) whether each CSR drove a vehicle with a gross vehicle weight rating of 26,001 pounds or greater (California motor carrier regulations); and (4) whether each CSR, if no exemption applies, worked overtime on a given day.[2] These inquiries, concludes defendant, will necessarily require that individualized showings predominate at trial, and prohibit continued class certification.

Prior to turning to the merits of these arguments, there is an important preliminary issue that must first be addressed: plaintiffs' "straight" time versus "premium" time theory.

---

[2] Defendant also argues that the number of overtime hours worked by each CSR, in the event no exemptions apply and the CSR is entitled to overtime pay, must be determined on an individual basis. The court finds this to be a damages issue, however, as to which the presence of individualized inquiries does not warrant decertification of the class. See Yokoyama v. Midland Nat. Life Ins. Co., 594 F.3d 1087, 1089 (9th Cir. 2010)("The potential existence of individualized damage assessments... does not detract from the action's suitability for class certification"); Blackie v. Barrack, 524 F.2d 891, 905 (9th Cir.1975)("[t]he amount of damages is invariably an individual question and does not defeat class action treatment")(citations omitted).

6

Plaintiffs' principal response to defendant's decertification argument is that defendant has essentially assumed too much, since its motion focuses on only a small subsection of plaintiffs' overtime claims that seek compensation in the form of 'time and a half' wages pursuant to the Labor Code (i.e., "premium" pay claim), and ignores entirely plaintiffs' "core" claim – that plaintiffs are hourly employees seeking overtime compensation at the regular single hourly rate of pay (i.e., "straight" pay claim). According to plaintiffs, since there is no dispute that plaintiffs were treated as hourly employees, the class is at base entitled to the basic "straight" or hourly rate of pay, for every hour of uncompensated overtime worked. This "straight" pay claim is at the heart of plaintiffs' complaint, is responsible for at least two thirds of plaintiffs' alleged damages, and is unaffected by the motor carrier exemption found in the IWC's wage order, say plaintiffs. Rather, the motor carrier exemption applies only to the extent plaintiffs seek "premium" overtime pay in addition to straight pay – i.e., only to the extent plaintiffs seek an additional third of damages on top of the regular hourly rate. Thus, say plaintiffs, since litigation of the motor carrier exemption's applicability is irrelevant to the majority of plaintiffs' damages claims, defendant's motion should be deemed largely irrelevant at the outset and therefore no bar to continued certification of the class.

The problem with plaintiffs' premium v. straight time theory, is that the court finds no support for it. As defendant points out, plaintiffs submit no legal authority – statutory or otherwise – affirmatively recognizing plaintiffs' distinction between premium and straight pay (e.g., which distinction effectively takes the concept of "time and a half" and divvies up overtime pay into "time," and separately, "half" time). Labor Code §§ 204 and 226, to the extent plaintiffs rely on them, do not distinguish between straight time claims and premium claims for overtime, nor do these sections expressly provide that an employer must pay its employees at a straight time rate for overtime hours worked. See Cal. Lab. Code § 204 (regulating timing of payment of wages by employer); id. at § 226 (requiring employer to provide accurate itemized wage statements). Plaintiffs also point to the IWC's Wage Order for support, noting that Section 3 of the IWC's Wage Order supports application of the

motor carrier exemption to claims for premium overtime pay only. However, as defendant correctly notes, Section 3(A) of the relevant Wage Order – which contains the governing overtime requirements for employers, and provides that employees who work "more than eight (8) hours in any workday or more than 40 hours in any workweek" receive "one and one-half (1 ½) times" the employee's regular rate of pay – does not distinguish between straight time and premium time specifically. See Order 4, § 3(A). Moreover, even if Section 3(A) could be read to support a clear distinction between overtime at rates "one time" the regular rate of pay *and* separately, rates at "one-half times" the regular rate of pay, defendant nonetheless correctly points out that Section 3(K) of the Wage Order provides that the Wage Order is "*not applicable* to employees whose hours of service are regulated by" California or federal motor carrier safety regulations (emphasis added). See id., § 3(K). Thus, the Wage Order's motor carrier exemption would apply to plaintiffs' claims, whether based on claims for straight time pay or premium pay.

In sum, there is no support for the premium v. straight time theory espoused by plaintiffs, and even if such support could be found, the governing Wage Order upon which the motor carrier exemption is premised provides that this exemption applies to both straight time pay and premium pay. Accordingly, the court does not find litigation of the motor carrier exemption to be, as plaintiffs urge, irrelevant to the majority of plaintiffs' claims. Rather, litigation of the motor carrier exemption goes to the whole of plaintiffs' claims for unpaid overtime wages and bears directly on defendant's liability for these claims.

The court now turns to the merits of defendant's arguments regarding the existence of individual issues among members of the class, in relation to the motor carrier exemption. Specifically, the court analyzes whether the inquiries upon which the motor carrier exemption's applicability is based – i.e., whether the CSR class members' hours were regulated by either California or federal motor carrier regulations – require too much individualized proof to support continued certification of the plaintiff class.

1.      Whether Each CSR Drove Hazardous Materials

The California motor carrier regulations contain certain provisions that limit the driving time of drivers of various vehicles – which vehicles are listed in California Vehicle Code § 34500, and include "trucks ... transporting hazardous materials." See 13 Cal. Code of Reg. §§ 1200 et seq.; Cal. Vehicle Code § 34500. Here, defendant argues that its CSRs regularly drive trucks transporting hazardous materials, such that its CSRs are governed by the California motor carrier regulations, and are exempt from overtime requirements under the IWC Wage Order's motor carrier exemption. Plaintiffs, for their part, assert that CSRs transported hazardous waste materials only on certain days.

In its March 2008 order denying defendant's motion for reconsideration and second motion for summary judgment, the court held, upon consideration of the parties' competing evidence on this issue, that a material dispute of fact exists as to whether plaintiff Wamboldt was engaged in the regular duty of transporting hazardous waste. Specifically, the court found that, while Wamboldt did transport hazardous material on at least some days, there is a dispute as to the nature and percentage of hazardous waste he actually did transport, and as to whether Wamboldt was regularly engaged in the transportation of hazardous waste. See Reconsideration/MSJ Order at 7-11.

Defendant now contends that this material dispute must be resolved with respect to each and every one of the 304 CSRs who are members of the class, and that such resolution would require impermissibility individualized proof. Defendant submits, in support, the declarations of Billy Ross – Safety-Kleen's Vice President of Environmental Health and Safety for Branches, Distribution Centers and Accumulation Centers – and Kevin Lesinksi – defense counsel – who testify: that each CSR's territory, route and schedule is different; the CSRs' routes and schedules change daily, depending on customer needs; that the types, quantities and hazardous nature of materials and waste transported to and from customers by each CSR changes daily; that a determination as to the transportation of hazardous waste by CSRs requires examination of records that were

9

on the CSR's truck each day, as well as records identifying the hazardous waste picked up by the CSR; that those records identify various hazardous materials and waste according to codes designated by the Environmental Protection Agency, Department of Transportation and the State of California Department of Toxic Substances Control – which codes may differ on a given day. See generally Declaration of Billy Ross ISO Mot. to Decert. ("Ross Decl."). Defendant also notes that, as an evidentiary matter, proof of hazardous waste delivery will require introduction of Daily Trip Reports, Bills of Lading, Uniform Hazardous Waste Manifests, consolidated Uniform Hazardous Waste Manifests, customer invoices, customer receipts and other documents; and that it will also require witness testimony from customers and CSRs. See generally Declaraton of Kevin Lesinski ISO Mot. to Decert. ("Lesinksi Decl."); Ross Decl., ¶ 4. Accordingly, concludes defendant, determining the portion of time overall spent on transporting hazardous waste by members of the class, will require a detailed inquiry of each and every CSR's multiple daily records, and will be highly individualized, not to mention time consuming.

Plaintiffs, in opposition, do not substantively contend that common issues predominate over individualized ones at trial, but rather, assert that the issue whether an individual CSR transported hazardous waste on given days may be proven through the use of summary evidence and stipulated facts. To that end, plaintiffs have agreed to stipulate to each CSR's transport of hazardous waste, for all days for which defendant can prove such transport took place. Plaintiffs also suggest that defendant can submit its documentary evidence regarding each CSR's transport of hazardous waste in summarized exhibit form, so as to facilitate the streamlined introduction of evidence in a manner that is common to the class.

On balance, the court is persuaded that individual issues are likely to predominate over common ones at trial as to whether members of the plaintiff class drove hazardous waste material on any given day. In order for the court to determine that the plaintiff CSR class is regulated by California motor carrier regulations, and that the motor carrier

exemption therefore applies, defendant must establish that each CSR transported hazardous materials on any given day as a regular part of his/her duties.[3]  Given defendant's testimony, however, that each CSR had divergent routes, divergent customers, and divergent products – not all of which may necessarily constitute hazardous waste – to be transported on any given day, such an inquiry would in essence require the equivalent of numerous mini-trials for each plaintiff as to the same issue.  In other words, individualized issues do predominate.

To the extent, moreover, that plaintiffs have offered to stipulate to the applicability of the exemption as long as defendant provides some documentary evidence that some CSRs carried hazardous waste material on given days, this offer to stipulate in reality only addresses the efficiency concerns that would otherwise arise in fully litigating the hazardous waste issue for each individual CSR.  It does not address the fundamental problem that defendant's argument points out – i.e., that an individualized determination must nonetheless be made with respect to *each CSR*.[4]  The same holds true with plaintiffs' suggestion that defendant present its evidence by way of summarized exhibits: while such summarization may, indeed, streamline the trial process and facilitate a more efficient trial with respect to the 304 CSRs who form a part of the plaintiff class, summarization of evidence in no way directly counters defendant's objection that the evidence to be summarized is itself highly individualized among the class members.

Finally, to the extent plaintiffs rely on Gomez v. Lincare, 173. Cal. App. 4th 508 (2009) for support for a finding of predominance, this case is wholly inapposite to the issue

---

[3]  It is useful to note that under the federal case law interpreting the federal analogous motor carrier exemption, the Supreme Court has found that 4% total driving time and driving as a "principal employment" duty satisfies the exemption.  See, e.g., Morris v. McComb, 332 U.S. 422 (1947); see also Kerr v. Jeans, 193 F.2d 572, 573 (5th Cir. 1952).  As the court noted in connection with defendant's last summary judgment motion, however, the parties dispute how much time plaintiff Wamboldt spent driving.  This dispute is likely to repeat itself with respect to each member of the class.

[4]  If anything, plaintiffs' offer to stipulate is relevant to the superiority element of 23(b)(3) – an issue that has not been raised before the court here.

before the court. While Gomez did deal with application of the motor carrier exemption via proof that plaintiff drivers were governed by California motor carrier regulations, the Gomez court considered the issue on summary judgment, and did not discuss any issues related to class certification, let alone the predominance requirement. Indeed, Gomez was not even a class action. Moreover, the Gomez court explicitly noted that defendant had offered undisputed evidence that plaintiffs' duties included transporting hazardous materials, and that such materials were *always* carried in the vans driven by plaintiffs. That is simply not the case here. Material disputes of fact exist as to what hazardous materials were carried by which CSRs, and when. And it is precisely the variation among class members in answering these questions that prevent a finding of predominance as to the issue.

In sum, no amount of summarized material and stipulated facts will obviate the court's need to make individualized determinations as to whether each CSR, on a case by case basis, transported hazardous materials on a given day – such that they were regulated by the California motor carrier regulations, and exempt from overtime regulations by the motor carrier exemption. The court therefore concludes that individual questions predominate as to this issue.

    2.    <u>Whether Each CSR Transported Material that was Moving in Interstate Commerce</u>

Defendant also asserts a defense to overtime liability on the basis that its CSRs' driving hours were regulated by the federal motor carrier regulations. In other words, defendant argues that the hours of its CSRs are regulated by the United States Department of Transportation Code of Federal Regulations, title 49, sections 395.1 to 395.13, Hours of Service of Drivers. Part 395, in turn, defines "motor carriers" as persons who provide transportation of "property" by "commercial motor vehicle," and a "driver" is a person who operates a "commercial motor vehicle." See 49 C.F.R. § 390.5. A "commercial motor vehicle" is in turn defined as a motor vehicle "used on a highway in interstate commerce to transport ... property...." See id. Defendant contends that its CSRs were regulated by the

federal motor carrier regulations because they were engaged in transporting property in "interstate commerce." Specifically, each CSR picked up waste product from defendant's customers in California, which waste product was pre-routed and shipped to locations outside the state. Accordingly, defendant asserts, plaintiffs are exempted from overtime requirements.

The court previously considered the merits of defendant's argument and noted that, in order to determine whether a CSR is a qualifying "driver" engaged in operating a vehicle used in "interstate commerce," the court must "examine the character of the shipments [the driver is] charged with delivering, and the intent of the shippers as to the ultimate destination of the goods." See Reconsideration/MSJ Order at 16-17; see also Watkins v. Ameripride Servs., 375 F.3d 821, 875 (9th Cir. 2004). The court held that here, disputed issues of material fact exist with respect to the ultimate character of the shipments that plaintiff Wamboldt was delivering, and whether Wamboldt's deliveries could properly be characterized as within the 'practical continuity of interstate movement.' See Reconsideration/MSJ Order at 17-18.

In moving for decertification, defendant – as it did in connection with the foregoing issue regarding CSRs' transportation of hazardous waste – again points to evidence demonstrating variations in the degree to which each CSR transported property in interstate commerce on a given day. Defendant notes: that each CSR has a different route on any given day, different customers, and different parts and products to transport; each hazardous waste storage facility to which CSRs dropped off waste at the end of each work day are merely transfer stations, not final destinations for the waste; and the final destinations for the waste are waste treatment facilities – the majority of which are located outside California, including defendant's facilities in Texas and Kentucky. See Ross Decl., ¶¶ 5, 9, 22-25. Thus, in order to determine whether, on any given day, a CSR was transporting material that ended up in interstate commerce, the court will have to examine the voluminous daily records filled out by each CSR, along with the testimony of

1 defendant's witnesses concerning the type and quantity of waste picked up by the CSRs,
2 and the ultimate destination of such material. Based on these facts, defendant contends
3 proof of the exemption will require overly individualized evidence.

4 Plaintiffs oppose defendant's argument by contending that it is irrelevant whether an
5 individual CSR transported waste to another state. Rather, the focus of the inquiry is
6 simply on whether *defendant* ultimately transports its aggregated waste to another state.
7 Thus, there is no need for an individualized inquiry among class members. Furthermore,
8 plaintiffs note that no CSR ever crossed state lines, and so do not qualify as drivers
9 engaged in the interstate transport of property.

10 Defendant is ultimately correct. As noted above, this court already held that, in order
11 to determine whether a CSR plaintiff is a qualifying "driver" engaged in interstate commerce
12 under the federal regulations, courts must examine the "character" of the shipments
13 delivered by the drivers, and defendant's intent as to the *ultimate destination* of the goods.
14 The court also found that this is a determination that can only be made "after considering
15 the entire panoply of 'facts and circumstances surrounding the transportation.'" Watkins,
16 375 F.3d at 825. Thus, regardless whether a CSR drives a portion of a route that ultimately
17 transported goods out of state, or whether the CSR him or herself ultimately crosses state
18 lines, the court's inquiry must be rooted in the facts and circumstances surrounding the
19 *drivers*' transportation of shipments, as well as the shipments' ultimate destination. And
20 since defendant has demonstrated with testimony that the facts and circumstances of each
21 driver's transportation of shipment, and each shipment's ultimate destination, varies on a
22 given day, the court must necessarily engage in a highly individualized inquiry for each
23 member of the class, to determine whether that driver's hours were, in fact, regulated by
24 the federal motor carrier regulations on a given day.

25 Defendant's reliance on Bishop v. Petro-Chemical Transport, LLC, 582 F.Supp.2d
26 1290 (E.D. Cal. 2008), is also instructive. In Bishop, the named plaintiff worked as a truck
27 driver for his former employer and brought suit against defendant employer on behalf of a
28

14

class, contending that he regularly worked in excess of forty (40) hours per week, but had been unlawfully denied overtime. Plaintiff sought certification of two classes based on defendant's purportedly unlawful failure to pay overtime: a FLSA class, and a California class alleging violations of the state's unfair competition law. Similar to plaintiffs here, defendant in Bishop sought to defend against the merits of the action by arguing that the federal motor carrier exemption applied. Defendant there also argued – as here – that the classes at issue were improper because an intensive individualized inquiry would have to be performed to determine whether the motor carrier exemption applied.

In declining to certify either class, the Bishop court cited Watkins, and noted that the federal motor carrier defense can be established by (1) showing that a driver can reasonably be expected to drive across state lines, or (2) drivers hauled goods in "the practical continuity of movement" in interstate commerce. The court distinguished wage and hour violations from the policies inherent in employment discrimination cases, and concluded that with respect to Rule 23 specifically, neither commonality nor predominance had been satisfied. See 582 F. Supp. 2d at 1308-09.

Although the Bishop court's analysis took factors into account that are not relevant here, the result is nonetheless similar. The court finds that, for the reasons stated, individualized issues will likely predominate at trial as to whether the plaintiff class transported property in interstate commerce, such that their hours were regulated by the federal motor carrier regulations, and thus exempt from overtime requirements.

3. <u>Whether Each CSR Drove a Vehicle with a Gross Vehicle Weight Rating ("GVWR") of 26,001 Pounds or Greater</u>

Defendant also asserts a second ground for concluding that the hours of its employees are regulated by California motor carrier regulations: that on many days, its CSRs drove trucks with gross vehicle weight ratings ("GVWR") of 26,001 pounds or more. See 13 C.C.R. § 1200 (regulations apply to vehicles listed in Vehicle Code § 34500, which includes commercial motor vehicles with a GVWR of "26,001 or more pounds"). As with

the preceding issues, defendant contends that this inquiry will require a highly individualized showing at trial, such that the predominance factor can no longer be satisfied.

Defendant points out that plaintiff Wamboldt testified that at times he drove a truck with a GVWR rating of 33,000 pounds, and at times he drove a truck with a GVWR of up to 25,999 pounds. See Declaration of Robert W. Tollen ISO Mot. to Decert. ("Tollen Decl."), Ex. A at 10:14-17; cf. id., Ex. A at 10:19-20. In addition, Mr. Ross testifies that over the course of the period covered by the present action, defendant provided various types of trucks for its CSRs to drive. See Ross Decl., ¶ 34. Some have GVWR ratings of 26,001 or more pounds, but others have lower GVWR ratings. Id. Thus, concludes defendant, depending on the weight of the particular truck that an individual CSR was driving on a particular day, that CSR may have been regulated by the California motor carrier regulations, or not. A determination of this issue would require an individualized analysis for each CSR, covering all days on which that given CSR worked.

Plaintiffs, in response, again fail to dispute the individualized nature of the requisite showing per se, relying instead once more on an offer to stipulate to the applicability of California motor carrier regulations and the motor carrier exemption, upon summarized proof that a given CSR drove a truck with the requisite GVWR on a given day.

For all the same reasons already discussed in connection with plaintiffs' stock response – namely, the insufficiency of the response to adequately rebut the individualized nature of the inquiry that must be undertaken at trial – plaintiffs fail to demonstrate that the predominance requirement is satisfied here, in the face of defendant's evidence suggesting that, indeed, individualized issues and not common ones are likely to predominate at trial with respect to the inquiry at bar.

Accordingly, the court finds that the predominance requirement is not satisfied as to whether defendant's CSRs are regulated by the California motor carrier regulations on any given day, such that defendant is exempted from overtime liability.

### 4. Whether Each CSR Worked Overtime on a Given Day

Finally, defendant has argued that, even assuming that the court were satisfied that the foregoing grounds for application of the motor carrier exemption may be demonstrated by common proof, there is yet another individualized inquiry that the court would have to undertake in order to determine whether a plaintiff was entitled to overtime on a given day (assuming that the proof at trial demonstrates that no exemption from overtime applies on that given day). Namely, the court will need to make an individual determination for each CSR as to what days they did and did not work beyond eight hours, such that defendant is obliged to pay overtime compensation.

Plaintiffs contend that, in order to determine how many hours of overtime were worked by the CSRs, an estimate can be used to arrive at the amount of hours worked by each CSR. Plaintiff submits the declaration of its expert statistician, Dr. Jim Lackritz, on this point. Dr. Lackritz testifies that based on 43 class members' declarations, he can predict with 95% confidence that the estimated mean shift length was 10.33 hours and is accurate to within +0.22 hours. See Declaration of James Lackritz ISO Opp. Mot. to Decert. ("Lackritz Decl."), ¶¶ 6-8.

Defendant is generally correct that a determination as to a plaintiff's entitlement to overtime on a given day/week is an issue that goes to liability, and that an analysis as to each and every CSR's daily payroll records to calculate hours worked depends upon necessarily individualized proof. However, given that plaintiffs' expert, upon examination of 43 declarations from members of the class, has applied a statistical methodology to estimate a mean shift length of more than ten hours for the class as a whole, the court finds that plaintiffs have presented a methodology through which a determination as to whether class members in fact worked overtime on a given day, may be determined with reference to class-wide proof.

This is not to say that plaintiffs' overtime damages may be calculated with reference to class-wide proof. Indeed, the specific amount of overtime that each individual CSR

worked on any given day, is a matter that must be determined on an individual basis, before each CSR may be awarded damages. As mentioned at the outset, however, individual variations as to the amount of damages among CSRs "does not detract from the action's suitability for class certification." Yokoyama, 594 F.3d at 1089.

At any rate, the court's ruling on this point is not dispositive for purposes of defendant's decertification motion. Because for the reasons already discussed above, there are simply too many individualized issues that arise in connection with application of the motor carrier exemption to plaintiffs' overtime claim, such that the individual issues will predominate over common ones at trial. Collectively, these issues argue against continued certification of the plaintiff class under Rule 23(b)(3).

C. Conclusion

For the foregoing reasons, the court GRANTS defendant's motion for decertification of the plaintiff class. No further motions will be entertained. It is time to set this case for trial. The parties shall appear at a case management conference for that purpose on October 21, 2010 at 2:00 p.m.

**IT IS SO ORDERED.**

Dated: September 20, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge

18